Case No: 22-1096

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

ERIC S. ZALL,

        Plaintiff-Appellant,

   vs.

STANDARD INSURANCE COMPANY,

        Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Wisconsin
Case No: 20-cv-19-slc
The Honorable Magistrate Judge Stephen L. Crocker

---

## BRIEF OF THE PLAINTIFF-APPELLANT, ERIC S. ZALL

---

William E. Parsons
Email: wparsons@hq-law.com
Jessa L. Victor, State Bar No. 1099144
Email: jvictor@hq-law.com
HAWKS QUINDEL, S.C.
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

Attorneys for Plaintiff-Appellant, Eric S. Zall

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-1096

Short Caption: Eric S. Zall v. Standard Insurance Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Eric S. Zall

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Hawks Quindel, S.C.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ William E. Parsons    Date: 02/01/2022

Attorney's Printed Name:  William E. Parsons

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address:  409 E. Main Street, PO Box 2155

    Madison, WI 53701-2155

Phone Number: 608-257-0040    Fax Number:  608-256-0236

E-Mail Address: wparsons@hq-law.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES .........................................................................ii

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES................................................................. 1

STATEMENT OF THE CASE...................................................................... 2

   A.  Relevant Facts................................................................................ 2

   B.  Procedural History and Rulings Presented for Review...................... 3

SUMMARY OF ARGUMENT ..................................................................... 4

ARGUMENT ............................................................................................... 5

   A.  Standard of Review ....................................................................... 5

   B.  By Violating ERISA Claims Procedures, Standard Did Not Afford Zall a Full and Fair Review. ....................................................................... 6

      1.  The amended version of subsection (h)(4) applies to Zall's claim................. 8

      2.  Even before subsection (h)(4) was amended, a full and fair review necessitated the opportunity to review and respond to new evidence on appeal.................................................................................. 11

   C.  Standard's Violations of ERISA Claims Procedure Prejudiced Zall............... 13

   D.  Standard unreasonably concluded Zall was disabled by a Limited Condition, to the exclusion of radiculopathy and disc herniation..................................... 14

CONCLUSION......................................................................................... 16

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. (32)(A)(7) and CIRCUIT RULE 32(c)............................................................................ 18

FED. R. APP. P. 31(a) CERTIFICATION................................................ 19

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30 .............. 19

CERTIFICATE OF SERVICE ................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Accord Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78 (2d Cir. 2021) ................................ 11

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ........................................ 5

*Hughes v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 386 (D. Conn. 2019). 12

*Jette v. United of Omaha Life Ins. Co.*, No. 20-1713, 2021 U.S. App. LEXIS 33433

    (1st Cir. Nov. 10, 2021) ............................................................................ 9, 12, 13, 14

*La Fleur v. La. Health Serv. and Indem. Co.*, 563 F.3d 148 (5th Cir. 2009) ............... 6

*Majeski v. Met. Life Ins. Co.*, 590 F.3d 478 (7th Cir. 2009) ..................................... 6, 7

*Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666 (9th Cir. 2011) ........ 6, 8

*Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805 (7th Cir. 2006) .................................. 5

*Smith v. Hartford Life & Accident Ins. Co.*, 421 F. Supp. 3d 416, 418-419 (E.D. Ky.

    2019) ............................................................................................................................ 10

*Whitaker v. T.J. Snow Co.*, 151 F.3d 661 (7th Cir. 1998) ............................................ 8

**Statutes**

29 C.F.R. § 2560.503-1 ............................................................................................... 6, 7

29 C.F.R. § 2560.503-1(h) ............................................................................................. 8

29 C.F.R. § 2560.503-1(h)(4) ..................................................................................... 7, 8

29 C.F.R. § 2560.503-1(p) ....................................................................................... 10, 11

**Other Authorities**

Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316, 2016

    WL 7326455 (Dec. 19, 2016) .................................................................................. 9, 12

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this matter pursuant to 29 U.S.C. §§ 1132(e)(1) and (f) and 28 U.S.C. § 1331 because Plaintiff-Appellant, Dr. Eric Zall's claims arise under the Employee Retirement Income Security Act of 1974 (ERISA).

Zall's appeal is from the District Court's Opinion and Order entered on December 27, 2021 by the Honorable Magistrate Judge Stephen L. Crocker, a final order that disposed of all parties' claims. A001-25;[1] *see also Zall v. Standard Ins. Co.*, No. 21-cv-19-slc, 2021 U.S. Dist. LEXIS 245593 (W.D. Wis. Dec. 27, 2021). Zall timely filed his Notice of Appeal on January 20, 2022, the 24th day following the December 27, 2021 judgment.

This Court has jurisdiction to decide this appeal pursuant to 28 U.S.C. § 1291 given the District Court entered its Opinion and Order and final Judgment in Defendant's favor on December 27, 2021.

## STATEMENT OF THE ISSUES

1.  Did the District Court err in finding that Standard afforded Zall a full and fair review of his claim despite failing to provide him with an opportunity to review and respond to new evidence it generated on appeal?

2.  Did Standard's alleged violation of ERISA claims procedures prejudice Zall?

3.  Did the District Court err in finding that Standard reasonably concluded Zall's disability was due to a "Limited Condition" to the exclusion of radiculopathy and disc herniation?

---

[1] Citations to Zall's short appendix, contemporaneously filed, will appear as "A_."

## STATEMENT OF THE CASE

### A. Relevant Facts

Zall worked as a dentist before chronic neck pain and right-handed numbness and weakness forced him to give up his career in 2013. Pl.'s PFOF ¶ 29-30. Zall has since been diagnosed with a disc herniation and cervical radiculopathy based on diagnostic imaging and his doctors opined that these conditions cause his disability. Pl.'s PFOF ¶ 31, 33; *see also* Pl.'s PFOF ¶ 75-76 (confirming that Standard's own hired physician also confirmed that Zall's EMG revealed cervical radiculopathy). Upon becoming disabled, Zall applied for long term disability (LTD) benefits under his employer's group long term disability insurance policy (the Plan), which Standard insured and administered. A002-03. Standard approved his claim and continued paying his benefits for the next several years. A005.

Approximately six years later, Standard reviewed Zall's file, allegedly to allegedly determine whether his claim was subject to the Plan's provision for Other Limited Conditions.[2] A007. This provision limits benefits to just 24 months for disabilities due to a "disease or disorder of the cervical, thoracic, lumbosacral back and surrounding soft tissue" and "carpal tunnel or repetitive motion syndrome." A003. The Plan further provides that Other Limited Conditions do not include "herniated discs with neurological abnormalities that are documented by… [an MRI]" or "radiculopathies that are documented by [an EMG]." *Id*. Standard ultimately

---

[2] Standard offers no clear explanation for why it continued paying Zall's claim for benefits for more than 24 months if it suspected his claim was subject to the plan's provision for Other Limited Conditions. A007.

determined Zall's claim was subject to the Other Limited Conditions provision and denied his claim for benefits beyond 2019. A011.

Zall appealed this determination, submitting letters from his treating providers confirming a disc herniation and radiculopathy prevent him from working as a dentist. A009-10. While reviewing his appeal, Standard hired Michelle Alpert, MD to conduct a peer review, in which she concluded that there was no support for diagnoses of either cervical radiculopathy or a cervical herniated disc. A010. Standard relied on this report to uphold its decision to deny Zall's claim. A010. Importantly, Standard did not provide a copy of this report to Zall before denying his appeal. A013. Thus, Zall did not have the opportunity to respond to this evidence. *Id*.

## B. Procedural History and Rulings Presented for Review

After exhausting his administrative remedies under the Plan, Zall filed his lawsuit in the Western District of Wisconsin against Standard for wrongfully denied ERISA benefits. A001, 011. The parties filed cross motions for summary judgment, and the District Court ultimately ruled in Standard's favor, finding that it did not violate ERISA claims procedures despite failing to provide Zall with an opportunity to review and respond to Dr. Alpert's report. A001-02, 014. The Court further found that Standard neither arbitrarily nor capriciously concluded that Zall's was disabled due a Limited Condition. A023. Zall subsequently appealed the District Court's judgment to the Seventh Circuit on January 20, 2022.

## SUMMARY OF ARGUMENT

ERISA claims procedures require that during the administrative appeal process, plan administrators provide claimants with any new evidence it generated or relied upon in connection with the claim before rendering its determination. Though this requirement was codified in 2018, it applies to all LTD claims filed since 2002. Since Zall filed his claim in 2013, the District Court erred in concluding that Standard afforded Zall a "full and fair review" despite failing to provide him with new evidence it generated and relied upon to review his claim.

Because the District Court erroneously concluded Standard did not violate ERISA claims procedures, it did not assess whether such a violation prejudiced Zall. Nonetheless, this Court may now make such a determination on the basis of the administrative record, which supports that Zall was prejudiced by Standard's procedural violation because he did not have the opportunity to review and respond to Dr. Alpert's report. For example, Dr. Alpert faulted Zall for a lack of updated diagnostic imaging to support his disability. Had Zall known updated imaging was sought, he could have undergone such testing to strengthen his claim.

Finally, the District Court erred in concluding that Standard reasonably subjected Zall's claim to the Plan's "Other Limited Conditions" provision. This provision limits benefits for disabilities due to Limited Conditions—such as disease of the cervical, thoracic, lumbosacral back and surrounding soft tissue, and carpal tunnel syndrome—to just 24 months, but further confirms that herniated discs that are documented by an MRI and radiculopathies that are documented by an EMG are *not* Limited Conditions. Here, Standard applied the limitation to Zall's claim despite

4

lacking evidence that he would be capable of returning to work but for his Limited Conditions. Contrarily, Zall submitted evidence supporting that he suffers from Limited Conditions and non-Limited Conditions concurrently and that, even absent the Limited Conditions, he would remain disabled.

For these reasons, the District Court's erroneous conclusions should be set aside and the rational and ruling regarding the parties' cross motions for summary judgment in the District Court's December 27, 2021 Opinion and Order should be reversed.

## ARGUMENT

### A. Standard of Review

A district court's grant of summary judgment is reviewed under the *de novo* standard and "without deference for the view of the district judge…almost as if the motion had been made to [the appellate court] directly." *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 809 (7th Cir. 2006) (citing *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 419 (7th Cir. 1998)).

Moreover, a claim for wrongfully denied benefits under U.S.C. § 1131(a)(1)(B) is also reviewed under a *de novo* standard unless the plan gives its administrator discretion to construe the plan terms or determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan grants the administrator such discretion, the claim is reviewed for an abuse of discretion, often referred to as the arbitrary and capricious standard. *Id*. In this case, the District Court applied the arbitrary and capricious standard of review as the Plan contains such discretionary language. A011.

Under the arbitrary and capricious standard, a denial of benefits must be overturned if the plan administrator failed to afford the claimant a "full and fair review" of their denied claim. *Majeski v. Met. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009). This failure must be more than "technical noncompliance," and must have prejudiced the claimant in some way. *See La Fleur v. La. Health Serv. and Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009).

Under the deferential standard, courts keep in mind a plan's structural conflict of interests. Specifically, where the plan administrator has a conflict of interests, meaning it is both the adjudicator of claim eligibility and the payer of claims, "review for abuse of discretion is not as deferential as abuse of discretion review of district court or administrative agency decisions." *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 681 (9th Cir. 2011). As both the adjudicator of Zall's eligibility for benefits and the payer of his claim, Standard has a structural conflict of interests in this case. Compl. ¶ 47. Thus, the Court should apply special skepticism to its review since the Plan has "act[ed] as judge in its own cause." *Salomaa*, 642 F.3d at 675.

## B. By Violating ERISA Claims Procedures, Standard Did Not Afford Zall a Full and Fair Review.

Standard failed to afford Zall a full and fair review when it violated the claims procedure regulations promulgated by the Department of Labor. Under these regulations, ERISA plan administrators must satisfy certain "minimum requirements" when reviewing adverse benefit determinations. *See* 29 C.F.R. § 2560.503-1. If an administrator's claims procedure fails to comply with said requirements, the process does not provide claimants with a "full and fair" review.

6

*Id.* Therefore, a violation of these procedural requirements constitutes the type of procedural unreasonableness required to overturn a denial of benefits under the arbitrary and capricious standard. *Majeski*, 590 F.3d at 484.

One of these requirements mandates that plan administrators "provide the claimant, free of charge, with ***any new or additional evidence*** considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination…in connection with the claim." 29 C.F.R. § 2560.503-1(h)(4)(i). If it fails to comply with this requirement, the plan administrator does not "provide a claimant with a reasonable opportunity for a full and fair review of a[n]…adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(4).

In this case, Standard generated and relied upon new evidence to review Zall's appeal—namely, Dr. Alpert's peer review report—without providing Zall the opportunity to review or respond to the same. Def.'s Resp. to Pl.'s PFOF ¶ 92. Standard defended its actions by arguing that the specific procedural requirement at issue, found in 29 C.F.R. § 2560.503-1(h)(4), does not apply Zall's claim because his *initial claim* was filed before subsection (h)(4) was amended in 2018. *See* A013. Because the District Court misapplied DOL regulations to agree with Standard that the relevant subsection (h)(4) does not apply to Zall's claim, its decision should be reversed and remanded.[3]

---

[3] Standard also contends that Zall waived his claim of a regulatory violation by not including it in his Complaint. Def.'s Resp. Br. 27-28. Although the district court did not address this argument, Zall's Complaint does, in fact, assert that "Defendant did not perform a 'full and fair review' of [his] claim." Compl. ¶30. Moreover, and contrary to Standard's assertions, a party may raise an issue for the first time in a summary judgment motion as long as both parties brief the issue, which they did in this case.

### *1.  The amended version of subsection (h)(4) applies to Zall's claim.*

29 C.F.R. § 2560.503-1(h) governs "appeal[s] of adverse benefit determinations" and requires that "[e]very employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination…under which there will be a full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1). Subsection (h)(4) of the section specifically governs "plans providing disability benefits." 29 C.F.R. § 2560.503-1(h)(4). That subsection confirms that a plan **does not** provide a full and fair review of the claim and adverse benefits determination unless, before issuing its determination, it provides the claimant with "any new or additional evidence considered, relied upon, or generated by the plan" in connection with the claim and gives the claimant a reasonable opportunity to respond to the same. 29 C.F.R. § 2560.503-1(h)(4)(i). A physician's evaluation provided to the plan administrator falls squarely within this disclosure requirement. *Salomaa*, 642 F.3d at 680.

Here, Standard does not dispute that it issued its adverse benefits determination on review without providing Zall a copy of Dr. Alpert's report. Def.'s Resp. to Pl.'s PFOF ¶ 92. As Zall was never provided a copy of this report, he was necessarily denied a reasonable opportunity to respond to it. Thus, under subsection (h)(4), Standard did not provide Zall with a full and fair review of his appeal.

---

*See, e.g., Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir. 1998). In such situations, federal courts consider this to constructively amend the original complaint. *Id.*

Standard nonetheless refutes that subsection (h)(4) applies to Zall's claim because that subsection was amended on April 1, 2018,[4] alleging instead that the amended version only applies to claims filed after April 1, 2018. *See* A013.

Ultimately, the District Court agreed with Standard, holding that subsection (h)(4) does not apply to Zall's claim because his claim was filed before 2018. A013-14. The Court's analysis of the issue, however, was severely lacking as none of its cited cases concerned, or were even applicable to, the subsection at issue here. Moreover, its analysis did not address the First Circuit's recent decision in *Jette v. United of Omaha Life Ins. Co.*, a case on point that provides extensive support for the applicability of subsection (h)(4) to Zall's claim.

In *Jette*, the First Circuit explains how longstanding DOL positions (*see* discussion *infra* Section B.2.), in addition to the plain language of the regulations, support the conclusion that subsection (h)(4) should apply to all claims filed since 2002. *Jette v. United of Omaha Life Ins. Co.*, No. 20-1713, 2021 U.S. App. LEXIS 33433, 25 (1st Cir. Nov. 10, 2021). The First Circuit further elucidates at length why cases like those cited by the district court have been uniformly unpersuasive as it relates to the applicability of subsection (h)(4). *Id*. at 25N14.  Thus, it is unsurprising

---

[4] According to the regulations' preamble, the purpose of the amendment was to make it explicit that "a full and fair review requires that claimants have a right to review and respond to new evidence or rationales developed by the plan during the pendency of the appeal and have the opportunity to fully and fairly present his or her case at the administrative appeal level, as opposed merely to having a right to review such information on request only after the claim has already been denied on appeal." Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316, 92,324, 2016 WL 7326455 (Dec. 19, 2016).

that the District Court failed to engage with *Jette*, since it is unclear how it could have reasonably sided with Standard after doing so.

Instead, the District Court cited to subsection (p)(3) of the regulation which, states that certain paragraphs of 29 § CFR 2560.503-1 only apply to "claims for disability benefits filed under a plan after April 1, 2018." A013 (citing 29 C.F.R. § 2560.503-1(p)(3) (2018)). However, the District Court failed to mention that the list of paragraphs included in that provision ***does not include*** the relevant subsection (h)(4). Nor did the District Court note that subsection (p)(1) states that "except as provided in paragraphs (p)(2), (p)(3) and (p)(4) of this section, this section shall apply to claims filed under a plan ***on or after January 1, 2002***." 29 C.F.R. § 2560.503-1(p)(1) (2021) (emphasis added). Therefore, and contrary to the District Court's conclusion, the plain language of the regulations indicate that the new amendments do in fact apply to Zall's claim since it was filed long after 2002.

The Court next cited to *Smith v. Hartford Life & Accident Ins. Co.*, a district court decision from the Eastern District of Kentucky, to support its assertion that subsection (h)(4) only applies to "claims for disability benefits filed under a plan after April 1, 2018." A013. However, the provision at issue in *Smith* was subsection (l)(2). *Smith v. Hartford Life & Accident Ins. Co.*, 421 F. Supp. 3d 416, 418-419 (E.D. Ky. 2019). That subsection, contrary to subsection (h)(4), is in fact listed in subsection (p)(3) as being limited in its application to claims filed after April 1, 2018. 29 C.F.R. § 2560.503-1(p)(3) (2021). Therefore, *Smith* is inapplicable to Zall's case and was improperly relied on by the District Court.

Finally, the District Court cited to the Second Circuit's decision in *Accord Mayer v. Ringler Assocs. Inc.*, to conclude that the current version of subsection (h)(4) is inapplicable to claims filed before April 1, 2018. A013. However, that conclusion is only supported (in a footnote) by citations to subsection (p)(4). *See Accord Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 86n4 (2d Cir. 2021). Subsection (p)(4) is yet another exception to the general applicability laid out in subsection (p)(1). Subsection (p)(4), admittedly, applies to the relevant subsection (h)(4), however, subsection (p)(4) explicitly states that it ***only*** applies to "claims for disability benefits filed under a plan from January 18, 2017 through April 1, 2018." 29 C.F.R. § 2560.503-1(p)(4) (2021). Zall filed his claim for benefits in 2013 and thus his claim falls outside this window. Therefore, the District Court's reliance on *Mayer* to assert that subsection (h)(4) does not govern Zall's claim is, once again, unfounded and in error.

In sum, the plain language of 29 C.F.R. § 2560.503-1(p)(1) confirms that subsection (h)(4) applies to all claims for benefits filed since 2002. Moreover, there is no case law—binding or otherwise—that supports the District Court's contrary ruling. Thus, as Zall filed his claim in 2013, the amended version of subsection (h)(4) must apply.

### 2. *Even before subsection (h)(4) was amended, a full and fair review necessitated the opportunity to review and respond to new evidence on appeal.*

When Zall filed his claim for LTD benefits in 2013, the DOL was already of the position that "claimants are deprived of a full and fair review, as required by section 503 of ERISA, when they are prevented from responding, at the administrative stage

level, to all evidence and rationales." Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. at 92,324-25. Indeed, well before the 2018 amendments, the DOL interpreted 29 C.F.R. § 2560.503-1 "as *already requiring* that plans provide claimants with new or additional evidence or rationales upon request and provide them an opportunity to respond…"[5] *Id.* at *92,324, n.17.

In accordance with the DOL's previously held position, the 2018 regulations' preamble explains that "[subsection (h)(4)] is amended to clarify that, contrary to what some circuit courts have held under the 2002 Regulation, the plan must provide claimants, free of charge, with new or additional evidence considered, relied upon, or generated by the plan… during the pendency of the appeal in connection with the claim." *Jette*, 2021 U.S. App. LEXIS at *25-26; *see also Hughes v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 386, 403 (D. Conn. 2019) (noting the DOL amended subsection (h)(4) "in order to make explicit its prior interpretation of the rule and to correct the errant court rulings that misconstrued it").

For this reason, this Court should "draw no conclusion in [Standard's] favor from the fact that the [DOL] has chosen to amend the regulation to make even more explicit a plan's duty of full and fair review." *Hughes*, 368 F. Supp. 3d at 403.

---

[5] Moreover, the DOL's interpretation of 29 C.F.R. § 2560.503-1 was known as early as June 2009 when the Secretary of Labor submitted an amicus curiae brief in *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009). *Jette*, 2021 U.S. App. LEXIS at *27. Further, the Supreme Court affords deference to agencies' interpretations even when those interpretations are advanced for the first time in amicus curiae briefs. *See id.* (citing *Auer v. Robbins*, 519 U.S. 452, 461-62, 117 S. Ct. 905, 911-12 (1997)).

**C. Standard's Violations of ERISA Claims Procedure Prejudiced Zall.**

Given Standard failed to provide Zall a full and fair review of his claim by violating 29 C.F.R. § 2560.503-1(h)(4), the Court next considers whether Standard's procedural violation prejudiced Zall. *Jette*, 2021 U.S. App. LEXIS 33433 at *28. Notably, appellate courts may make their own prejudice determination if the lower court has made no factual finding as to prejudice, and if one could be made on the basis of the administrative record before it. *Id*. at *29.

Here, the District Court found no procedural violation and thus did not consider whether Zall was prejudiced by the alleged violation. Regardless, this Court can readily determine Zall was prejudiced on the basis of the administrative record now before it. The administrative record supports that:

> [h]ad Standard provided Dr. Zall an opportunity to respond to Dr. Alpert's report, he would have submitted medical evidence rebutting Dr. Alpert's conclusions, including statements from his treating providers explaining the basis of their disagreements with Dr. Alpert's report, and would have pointed out various inconsistencies and factual errors included in her report. Such a response would have clearly set forth why reliance on Dr. Alpert's report to deny benefits would be unreasonable. Even if Dr. Zall's response would not have changed Standard's mind, it would still have served to develop the record more fully for the Court's review.

Pl.'s Br. 8-9.

Zall's inability to review and respond to Dr. Alpert's report prejudiced his case at both the administrative and district court level. In fact, the prejudice in this case closely mirrors that of the claimant in *Jette v. United of Omaha Life Ins. Co.* In that case, a doctor examined the claimant and her medical records and then produced an

unfavorable report which the plan "relied…on…to uphold its decision to terminate her LTD benefits." *Jette,* 2021 U.S. App. LEXIS 33433 at *30. Because the claimant "did not have the opportunity to review and respond to [the] report before [the plan provider] rendered its final determination on appeal," the First Circuit found that the claimant "was prejudiced by [the plan's] procedural violation," and remanded the case to allow the claimant an opportunity to review and respond to the report. *Id.* This line of reasoning directly applies to Zall's case. Therefore, the Court should find that, like the plaintiff in *Jette,* Zall was prejudiced by Standard's failure to provide him with the opportunity to review and respond to Dr. Alpert's report.

### D. Standard unreasonably concluded Zall was disabled by a Limited Condition, to the exclusion of radiculopathy and disc herniation.

In addition to denying Zall a full and fair review of his claim, Standard acted arbitrarily and capriciously in concluding, based on the existing record, that he was disabled by a Limited Condition and not by radiculopathy or disc herniation. Presumably, Standard reached this conclusion on the assumption that disabilities due to Limited Conditions and disabilities due to non-Limited Conditions are mutually exclusive. In reality, such conditions (and disabilities resulting therefrom) can, and often do, co-exist. Thus, it is not enough that there is reasonable support that Zall suffers from a Limited Condition. Rather, Standard must also have reasonable support that, but for the Limited Condition, Zall could return to work. The record does not lend such support here.

Rather, Zall's physiatrist confirms:

> Mr. Zall had documented chronic right C7 radiculopathy based on my electrodiagnostic study performed on 12-12-2014. MR scan was evaluated and showed C56 C67 disk herniation with mild cord impingement. Additionally, he also had concurrent right carpal tunnel syndrome (median nerve entrapment at the wrist). Based on the above findings, I think that it is unlikely that he is capable of working full-time as a dentist due to lack of dexterity which would make it unsafe for him to operate a surgical instrument.

A009. Similarly, his orthopedist notes he has been diagnosed with degenerative disc disease and a herniated disc at C6-7 resulting in C7 radiculopathy, and that these conditions cause pain, numbness and tingling in his right upper extremity that "interfered with his ability to safely function as a dentist."[6] *Id.* This evidence suggests that Zall suffers from Limited Conditions and non-Limited Conditions concurrently, and that even absent the Limited Conditions, he remains unable to safely practice dentistry.

Moreover, to the extent Standard argues there is a lack of recent medical records to support ongoing disability due to a non-Limited Condition, this alleged shortcoming results directly from Zall's inability to respond to Dr. Alpert's report. Pl.'s Br. 8-9. With Zall's most recent diagnostic imaging being from 2014, Standard was able to cast significant doubt on the relevancy of the older tests and associated doctor opinions. Indeed, Dr. Alpert's report states that "as of January 2020, there was no support for diagnoses of either cervical radiculopathy or a cervical herniated

---

[6] Indeed, the record is clear that Zall's conditions made it dangerous for him to practice dentistry. For example, in one instance before ceasing to work, Zall dropped a dental instrument down a patient's throat. Pl.'s PFOF ¶ 28.

15

disc…" A010. Thus, Zall's claim for benefits would likely have been significantly strengthened by a more recent round of imaging confirming the presence of the non-limited conditions—something he could have readily supplied had he been given the opportunity to review and respond to Dr. Alpert's report.

Instead, Standard benefited from its own procedural violation by denying Zall an opportunity to perfect any deficiencies in the record, and then pointing to such deficiencies in order to support its denial. But Standard cannot have it both ways, and this conduct is clear indication of an arbitrary and capricious decision-making process.

## CONCLUSION

For the reasons stated herein, Zall respectfully requests that this Court issue an Order reversing the District Court's decision to grant Standard's motion for summary judgment and its decision to deny Zall's motion for summary judgment, remanding this matter to district court for further proceedings, and awarding Zall his reasonable attorney's fees and costs.

Respectfully submitted this 22nd day of March, 2022.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant, Eric S. Zall*


By: */s/ William E. Parson*
William E. Parsons, WI SBN 1048594
Email: wparsons@hq-law.com
Jessa L. Victor, WI SBN 1099144
Email: jvictorQhq-law.com
409 E. Main Street
Madison, WI 53703

16

Telephone: 608/257-0040
Facsimile: 608/256-0236

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. (32)(A)(7) and CIRCUIT RULE 32(c)**

The undersigned, counsel of record for the Plaintiff-Appellant, furnishes the following in compliance with Fed. R. App. P. Rule 32(a)(7) and Circuit Rule 32(c).

I hereby certify that this Brief conforms to the rules contained in F.R.A.P. 32(a)(7) and Circuit Rule 32(cs) for a brief produced with a proportionally spaced serif font. The length of the brief is 4,308 words.

Dated this 22nd day of March, 2022.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant, Eric S. Zall*


By: */s/ William E. Parson*
William E. Parsons, WI SBN 1048594
Email: wparsons@hq-law.com
Jessa L. Victor, WI SBN 1099144
Email: jvictorQhq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236

**FED. R. APP. P. 31(a) CERTIFICATION**

I certify that the full contents of this Brief, as well as the Appendix thereto,

has been electronically filed on March 22, 2022.

Dated this 22nd day of March, 2022.

> HAWKS QUINDEL, S.C.
> *Attorneys for Plaintiff-Appellant, Eric S. Zall*
>
>
> By: */s/ William E. Parson*
> William E. Parsons, WI SBN 1048594
> Email: wparsons@hq-law.com
> Jessa L. Victor, WI SBN 1099144
> Email: jvictorQhq-law.com
> 409 E. Main Street
> Madison, WI 53703
> Telephone: 608/257-0040
> Facsimile: 608/256-0236

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

Pursuant to Circuit Rule 30(d), I hereby certify that the appendix to the brief

contains the materials required under Circuit Rule 30(a) and (b).

Dated this 22nd day of March, 2022.

> HAWKS QUINDEL, S.C.
> *Attorneys for Plaintiff-Appellant, Eric S. Zall*
>
>
> By: */s/ William E. Parson*
> William E. Parsons, WI SBN 1048594
> Email: wparsons@hq-law.com
> Jessa L. Victor, WI SBN 1099144
> Email: jvictorQhq-law.com
> 409 E. Main Street
> Madison, WI 53703
> Telephone: 608/257-0040
> Facsimile: 608/256-0236

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for Plaintiff-Appellant, hereby certified that on March 22, 2022, an electronic copy of the Plaintiff-Appellant's Brief and Appendix was served on counsel for Defendant-Appellee.

Dated this 22nd day of March, 2022.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant, Eric S. Zall*

By: */s/ William E. Parson*
William E. Parsons, WI SBN 1048594
Email: wparsons@hq-law.com
Jessa L. Victor, WI SBN 1099144
Email: jvictorhq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236

Case No: 22-1096

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

ERIC S. ZALL,

        Plaintiff-Appellant,

   vs.

STANDARD INSURANCE COMPANY,

        Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Wisconsin
Case No: 20-cv-19-slc
The Honorable Magistrate Judge Stephen L. Crocker

---

## SHORT APPENDIX OF PLAINTIFF-APPELLANT, ERIC S. ZALL

---

William E. Parsons
Email: wparsons@hq-law.com
Jessa L. Victor, State Bar No. 1099144
Email: jvictor@hq-law.com
HAWKS QUINDEL, S.C.
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

Attorneys for Plaintiff-Appellant, Eric S. Zall

# TABLE OF CONTENTS

OPINION AND ORDER

Denying Plaintiff's Motion for Summary Judgment and
granting Defendant's Motion for Summary Judgment,
filed on December 27, 2021 ………………………………………………………….. A001


JUDGMENT IN A CIVIL CASE

Entering judgment in favor of Defendant,
filed on December 27, 2021 ………..………………………………………………….. A024

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC S. ZALL,

                Plaintiff,

    v.

STANDARD INSURANCE COMPANY,

                Defendant.

OPINION AND ORDER

21-cv-19-slc

---

      In October 2013, plaintiff Eric Zall, a dentist, filed a claim for long-term disability insurance (LTD) benefits from his insurer, Standard Insurance Company.  Zall, asserts that he no longer can perform the essential functions of his job because of chronic neck pain and right-handed numbness and weakness resulting from a cervical disc herniation and radiculopathy.  Standard initially denied the claim but later reversed itself and found Dr. Zall eligible for LTD as of  November 1, 2013, and it paid him benefits for the next six years.  Then Standard reversed itself again: in December 2019 Standard advised Dr. Zall that it was terminating his benefits under the policy's Other Limited Conditions provision, which limits payment of LTD benefits to 24 months if the disabling condition is caused by, among other things, "diseases or disorders of the cervical . . . back and its surrounding soft tissue."  Dr. Zall contested the denial, asserting that his disabling condition is caused by cervical disc herniation and radiculopathy, which are excluded from the Other Limited Conditions limitation.  Standard disagreed and refused to reinstate his LTD benefits, although it let Dr. Zall keep the benefits it says it had overpaid from 2015 to the end of 2019.

      Dr. Zall now brings this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), challenging Standard's decision to terminate his benefits under the policy's Limited Conditions limitation.  The parties have filed cross-motions

for summary judgment.[1]  As explained below, I find that the claims administrator fully and fairly reviewed all of the evidence related to Dr. Zall's claim and came to the rational conclusion that Dr. Zall's disabling condition was not one for which long term disability was available under the policy.  Accordingly, I am granting Standard's motion, denying Dr. Zall's motion, and entering judgment for defendant.

The following facts, which are drawn from the Administrative Record ("AR"), dkt. 13, are undisputed.[2]

## UNDISPUTED FACTS

### I.  Background

Plaintiff Eric Zall co-owned a dental practice, Falls Dental Associates, S.C., which offered disability insurance to its employees under a group insurance policy issued by defendant Standard Insurance Company.  The policy is governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  Zall, a dentist, obtained coverage under the policy.

To show a disability under the Group Policy, a claimant must establish that he is "unable to perform with reasonable continuity the Material Duties of your Own Occupation."  The Policy includes a provision, "Disabilities Subject to Limited Pay Periods," which states:

> Payment of LTD Benefits is limited to 24 months during your entire lifetime for a Disability caused or contributed to by any one or more of the following, or medical or surgical treatment of one or more of the following  . . . Other Limited Conditions.

---

[1] Although Standard has styled its motion as a Motion for Judgment on the Administrative Record, *see* dkt. 17, I have construed it as a motion for summary judgment.

[2] In citing to the Administrative Record, I have used Standard's numbering, found at the bottom of each page.

Other Limited Conditions include:  chronic pain conditions; chronic fatigue conditions; "carpal tunnel or repetitive motion syndrome;" "arthritis, diseases or disorders of the cervical, thoracic, or lumbosacral back and its surrounding soft tissue;" and sprains or strains of joints or muscles. As relevant to this case, Other Limited Conditions do *not* include: (1) "herniated discs with neurological abnormalities that are documented by electromyogram and computerized tomography or magnetic resonance imaging;" or (2) "radiculopathies that are documented by electromyogram."

The Group Policy further provides that if a claimant is eligible for LTD benefits as a result of an Other Limited Condition, then no benefits are payable after 24 months unless the claimant "continue[s] to be Disabled as a result of a Physical disease, Injury, or Pregnancy for which payment of LTD Benefits is not limited."  The claimant bears the burden to show Proof of Loss, that is, "written proof that you are Disabled and entitled to LTD Benefits."  Finally, the policy confers to Standard "full and exclusive authority" to interpret the Policy and decide all matters arising thereunder, and specifies that Standard's exercise of that authority shall be "conclusive and binding."

## II.  Standard Approves Dr. Zall's Claim for LTD Benefits

Dr. Zall applied for disability benefits under the Group Policy on October 18, 2013, at the age of 48.  Dr. Zall indicated he could no longer work as a dentist because of pain and numbness in his neck and in his thumb and two fingers in his right hand.  Medical records showed that he began having neck pain and arm numbness around 2011, for which he was

A003

evaluated by Dr. Stephen Robbins, an orthopedic surgeon.  AR 1405.  An MRI in 2011 showed

a disc herniation at C5-C6 that was contributing to severe foraminal narrowing.  AR 1406-07.

On October 25, 2013, Dr. Zall saw Dr. Robbins for intermittent episodes of neck pain

radiating into his right arm.  Dr. Robbins noted that Dr. Zall had occasional episodes of

numbness and tingling in his fingers that were affecting his job as a dentist:  the numbness had

caused him to drop an instrument in a patient's mouth and decline to perform some dental

procedures.  Dr. Zall had a positive Spurling's test[3], but had full cervical spine range of motion,

5/5 strength in all upper extremity muscle groups, and normal deep tendon reflexes.  Dr. Robbins

found that Dr. Zall's symptoms were consistent with a diagnosis of a herniated disc with

intermittent radiculopathy.  He said Dr. Zall had noted significant improvement of his

symptoms but he "does have some residuals," that he should continue with his exercise program

and continue employment as tolerated.  Dr. Robbins noted that Dr. Zall might need to consider

disability if he had ongoing symptoms, but that no further studies were needed at that time.  AR

1404.

Eleven days later, Dr. Robbins signed an Attending Physician's Statement in support of

Dr. Zall's claim for benefits under the Group Policy, stating that Dr. Zall was unable to work as

of November 5, 2013.  AR 1516-17.

On February 14, 2014, Dr. Zall saw Dr. Robbins.  Dr. Zall complained of a three-week

history of pain along his right elbow, but said it had improved with physical therapy.  Dr. Zall

denied any radicular pain, numbness, tingling or weakness in the right arm, and the doctor noted

that Dr. Zall's strength and reflexes were normal.  Dr. Robbins diagnosed right lateral

---

[3] The Spurling test is a medical maneuver used to assess nerve root pain (also known as radicular
pain).  https://en.wikipedia.org/wiki/Spurling%27s_test (Nov. 19, 2021).

epicondylitis, *a.k.a.* "tennis elbow," and recommended an electromyography (EMG) study if Dr. Zall's symptoms worsened, but he saw no evidence of radiculopathy at that time.

On March 10, 2014, Standard denied Dr. Zall's claim for LTD.   Dr. Zall appealed, providing additional supporting documentation.   Dr. Zall's additional evidence included a functional capacity evaluation (FCE) that he underwent on April 29, 2014.   At the FCE, Dr. Zall stated that he had diminished dexterity in his right hand and numbness and tingling in his right arm after a few minutes of maintaining his arm in a static position.   The FCE included photographs of Dr. Zall depicting the "simulated dental procedure position" that he said caused right hand numbness.

According to the FCE, Dr. Zall was "only able to tolerate the elevated arm positions in sitting required to perform dental work for 2 minutes before numbness began in his right lateral three finger tips," affecting his dexterity and causing him to drop objects.   AR 1431-1465.

Standard consulted with Kenneth Kopacz, M.D., a board certified orthopedic surgeon. Kopacz reviewed the evidence and determined that Dr. Zall had limitations on fingering and hand dexterity resulting from his spinal condition that would interfere with his ability to perform fine motor skills, and in turn, preclude him from working as a dentist.   AR 1374-1378.   Kopacz noted, however, that Dr. Zall had not undergone any recent MRI studies or treatment, and that he might be a candidate for injections or even surgical decompression.   AR 1377.   Based on Kopacz's report, Standard approved and began paying Dr. Zall's claim on November 19, 2014, with a disability onset date of November 1, 2013.

### III. Standard Reviews Dr. Zall's Eligibility and Eventually Terminates his LTD Benefits

In August 2015, Standard initiated a review of Dr. Zall's file to determine if he was eligible for continuing LTD benefits.  Dr. John Hart, a physical medicine and rehabilitation specialist, reviewed and summarized Dr. Zall's medical records up to that point.  AR 1310-14.  Dr. Hart noted some observations that were inconsistent with a diagnosis of cervical radiculopathy, including 2014 office visit notes from Dr. Robbins stating that Dr. Zall was denying radicular pain and that his symptoms were "not suggestive of radiculopathy."  AR 1312, 1401.  In addition, Dr. Hart reviewed the FCE photographs depicting the positioning said to bring on Dr. Zall's symptoms.  Hart found them inconsistent with cervical radiculopathy insofar as elevating the arms tended to decrease, rather than increase, the symptoms in a person with that condition.  AR 1313.

Standard consulted another board-certified physician in physical medicine and rehabilitation, Dr. Hans Carlson, who prepared a report on November 23, 2015.  AR 1295-1298.  Noting that Dr. Zall consistently presented at exams without focal neurologic deficits and with intact strength and reflexes, Dr. Carlson opined that Dr. Zall's symptoms and examination findings were most consistent with cervical radiculitis.  He explained that radiculitis was a "disease or disorder of the cervical, thoracic, lumbosacral back and surrounding soft tissues and sprain or strain of joint or muscle without focal neurologic deficits," which would fall under the Group Policy's definition of an "Other Limited Condition" for which benefits were capped at 24 months.  AR 1297.  Both Carlson and Hart noted that Dr. Zall's medical records referred to Dr. Zall having recently undergone an EMG study and an updated MRI which might shed light on the question of radiculopathy, but neither study was in Standard's file.  AR 1297, 1313.

6

For reasons that are unclear, Standard continued to pay benefits to Dr. Zall for the next several years without reaching a determination whether his claim was limited by the Group Policy's provision for Other Limited Conditions.

In June 2018, Standard revived its review of Dr. Zall's claim, seeking updated information to determine Dr. Zall's functional abilities and whether his disability claim was limited by Other Limited Conditions. Among other things, Standard wanted to review the updated MRI and EMG that it had apparently failed to obtain when it reviewed Dr. Zall's file in 2015. Standard was eventually able to obtain those studies, which had been conducted in November 2014 and December 2014, respectively.

The 2014 EMG had been administered by Dr. Trinh Truong, who noted that it showed "muscle membrane irritability and reinnervation changes found in the distribution of the right C7 root, consistent with radiculopathy." AR 1273. He further noted his impression that the EMG was "consistent with neuralgia, neuritis, and radiculitis, unspecified," with a severity level of "moderate." In his summary, Dr. Truong concluded that there was "electrodiagnostic evidence for a chronic active right C7 radiculopathy" and for mild carpal tunnel syndrome on the right. AR 1273, 1290.

The MRI scan, which had been performed on November 24, 2014, documented multilevel disc disease in Dr. Zall's cervical spine, most significantly at C5-C6. More specifically, the MRI noted a "shallow disc herniation or bulge" at C4-C5 and moderate to severe narrowing of the foramen on the right at C5-6 and C6-C7. AR 1283-85.

In addition to the 2014 EMG and MRI studies, Standard obtained Dr. Zall's medical records from 2014-2019. These records showed that he had not seen any doctor for nearly three

years between March 2016 and February 27, 2019, nor had he undergone any more objective

testing or imaging.  From the time Standard approved Dr. Zall's claim for LTD in November

2014 until the end of September 2019, Dr. Zall had seen a doctor–Dr. Robbins–four times: on

April 15, 2015; March 2, 2016; February 27, 2019; and September 27, 2019.  AR 1252, 1260,

1280, 1350.  At every one of those visits, Dr. Robbins found that Dr. Zall had 5/5 strength in

his upper extremities, normal reflexes, and nearly full if not full range of motion in his neck.

Although Dr. Zall reported some numbness and occasional neck pain, he denied any weakness

or radicular pain in his arms.  AR 1252, 1260, 1280.  In his note from Dr. Zall's September 27,

2019 office visit, Dr. Robbins wrote that Dr. Zall "probably has a diagnosis of degenerative disk

disease with cervical radiculitis that has resolved.  He has had a history of right arm pain,

numbness and tingling, but this was his worst episode.  At the present time, the symptoms have

primarily resolved and he does not have any significant residuals."  AR 1252.

Standard provided Dr. Zall's medical records and reports to Dr. Natalie Boodin, a

physical and rehabilitation medicine specialist.  In a report dated December 6, 2019, Dr. Boodin

opined that degenerative disc disease was the only condition causing functional limitations for

Zall.  AR 1241-1247.  Dr. Boodin did not find support in the medical records for any herniated

discs.  She further noted that although the 2014 EMG showed a chronic C7 radiculopathy, she

was not persuaded that it was causing any restrictions or limitations, noting that Dr. Zall's

physical exams all showed full strength, normal reflexes, and only slightly decreased cervical

range of motion.  Thus, Dr. Boodin concluded that Dr. Zall's reported limitations were most

likely due to cervical degenerative disc disease rather than cervical radiculopathy.

Based on Dr. Boodin's opinion, Standard determined that Dr. Zall was no longer entitled to LTD payments because degenerative disc disease is an "Other Limited Condition" under the Policy for which disability benefits are not available after 24 months.  AR 1548.  Although this meant that Dr. Zall's benefits should have terminated in December 2015, Standard did not seek recovery from Dr. Zall of the four years of overpaid benefits because "the Limit review had not been completed previously."  AR 500, 1548.  Standard notified Dr. Zall of its determination by letter dated December 27, 2019, and advised him of his right to administrative review.  AR 498-502.

## IV.  Dr. Zall Appeals

Dr. Zall appealed, submitting letters from Drs. Truong and Robbins in support.  In a letter dated April 23, 2020, Dr. Truong wrote:

> Mr. Zall had documented chronic right C7 radiculopathy based on my electrodiagnostic study performed on 12-12-2014.  MR scan was evaluated and showed C56 C67 disk herniation with mild cord impingement.  Additionally, he also had concurrent right carpal tunnel syndrome (median nerve entrapment at the wrist).  Based on the above findings, I think that it is unlikely that he is capable of working full-time as a dentist due to lack of dexterity which would make it unsafe for him to operate a surgical instrument.

AR 57.

In a letter dated April 2, 2020, Dr. Robbins wrote that Dr. Zall had degenerative disc disease with severe foraminal narrowing at C5-6, C6-7 with a herniated disc at C6-7 resulting in C7 radiculopathy.  AR 77.  Robbins wrote that: (1)  Dr. Zall had increasing right arm pain and tingling into his right hand and fingers; (2) his symptoms were "chronic and progressive"; (3) the symptoms interfered with his ability to safely function as a dentist; and (4) Dr. Zall

9

continued to have such symptoms with activities and extended standing and repetitive use of his right arm and right fingers.  Dr. Robbins further explained that when he wrote on September 27, 2019 that Dr. Zall's symptoms had "primarily resolved" and Dr. Zall was no longer having any significant residuals, Dr. Robbins was describing a recent "flare up" that Dr. Zall was having, not his "ongoing C7 radiculapathy [sic]."  *Id.*

Standard consulted with Michelle Alpert, M.D., who is board-certified in physical medicine and rehabilitation with additional expertise in spinal cord injuries.  Dr. Alpert analyzed the medical evidence, conferred with Dr. Robbins, and prepared a written report, dated August 3, 2020.  AR 61-65.  Dr. Alpert found that the medical record supported a finding that Dr. Zall had degenerative disc disease of the cervical spine, chronic neck pain, right shoulder pain and numbness in the right hand, but that as of January 2020, there was no support for diagnoses of either cervical radiculopathy or a cervical herniated disc with neurologic abnormalities.  Dr. Alpert noted that the 2014 MRI showed foraminal narrowing, not a herniated disc or nerve root impingement, and Dr. Zall did not have the expected sensory, reflex, or motor loss that one would expect if he "truly had the neurologic abnormalities consistent with C7 radiculopathy."  AR 64.

Dr. Alpert further opined that the numbness Dr. Zall described in his thumb and first three fingers could be due to carpal tunnel, evidence of which was noted on the 2014 EMG and nerve conduction study.

On August 29, 2020, Standard notified Dr. Zall that it was upholding its decision to close his LTD claim.  Standard explained that it had found that Dr. Zall was disabled from his occupation as a dentist due to cervical degenerative disc disease and also potentially from carpal

10

tunnel syndrome, both of which were Other Limited Conditions for which LTD benefits were limited to a period of 24 months.  AR 483-87.  Dr. Zall then filed this suit.

OPINION

Because Dr. Zall seeks to enforce benefits under the policy, he bears the burden of proving his entitlement to contract benefits.  *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005).  Although an insurer like Standard has the burden of proving an exclusion applies—here, the "Other Limited Conditions" provision—the insured, in turn, has the burden of proving that an exception to the exclusion restores coverage.  *Zaccone v. Standard Life Ins. Co.*, 36 F. Supp. 3d 781, 783 (N.D. Ill. 2014) (citing *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010)).

To be entitled to disability benefits for more than 24 months, Dr. Zall had to prove two things: First, he had to show that he has a condition that satisfies the Group Policy's exception to Other Limited Conditions.  As described above, Dr. Zall contends that he has one of the following excepted conditions:

> (1) "herniated discs with neurological abnormalities that are documented by electromyogram and computerized tomography or magnetic resonance imaging;" or
>
> (2) "radiculopathies that are documented by electromyogram."

Second, Dr. Zall had to show that he is unable to perform the material duties of his occupation as a dentist because of one of these conditions, separate from any Other Limited Condition.  *Dutkewych v. Standard Ins. Co.*, 636 F. 3d 623, 636 (1st Cir 2015).

The parties agree that this court must review Standard's decision to terminate Dr. Zall's LTD benefits under the "arbitrary and capricious" standard.  *See, e.g., Cerentano v. UMWA Health*

11

& *Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013) (when plan grants administrator discretionary authority to determine eligibility for benefits, court asks only whether administrator's decision was arbitrary and capricious).  Under the arbitrary and capricious standard, a reviewing court overturns the decision only where there is an absence of reasoning to support it.  *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 864 (7th Cir. 2011) (citations omitted). The decision will be overturned only if it is "downright unreasonable." *Tegtmeier v. Midwest Operating Engineers Pension Tr. Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting *Carr v. Gates Health Care Plan*, 195 F.3d 292, 295 (7th Cir. 1999)). *See also Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107–08 (7th Cir. 1998) ("Review under this standard is extremely deferential and has been described as the least demanding form of judicial review . . .  It is not, however, without some teeth.")  This standard may be met if the plan administrator fails to provide the claimant with a "full and fair" review of his claim, for example, by "ignoring" or "dismissing out of hand" favorable evidence submitted by the claimant.  *Majeski v. Met. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009).

Dr. Zall argues that Standard's decision to terminate his LTD benefits under the Other Limited Conditions provision was arbitrary and capricious because:  (1) Standard denied him a full and fair review by failing to provide him a copy of Dr. Alpert's report or the opportunity to respond to it before terminating his benefits; (2) Standard's conclusion that Dr. Zall does not have either cervical radiculopathy or cervical herniated disc with neurological abnormalities is not rationally supported by the medical evidence; and (3) Standard waived its right to terminate his benefits by paying him benefits for more than six years after it now says his benefits should have ended.  As discussed below, none of these arguments is persuasive.

## I.  Dr. Alpert's Report

Dr. Zall argues that Standard denied him a "full and fair review" because it did not offer him a meaningful opportunity to respond to Dr. Alpert's report before denying his appeal.  In support of this argument, he cites new claims-procedure regulations promulgated by the Department of Labor that went into effect on January 18, 2017.  *Claims Procedure for Plans Providing Disability Benefits*, 81 FR 92316-01, 2016 WL 7326455 (Dec. 19, 2016).  Under the new rules, the claims administrator of an employee benefit plan providing disability benefits must produce to the claimant documents developed or considered during the administrative appeal before rendering its final determination.  29 C.F.R. § 2560.503-1(h)(4)(2018).

However, as Standard points out, the new rules apply to "claims for disability benefits filed under a plan after April 1, 2018."  20 C.F.R. § 2560.503-1(p)(3)(2018); *Smith v. Hartford Life & Accident Ins. Co.*, 421 F. Supp. 3d 416, 419 (E.D. Ky. 2019)(new rules apply to claims filed after April 1, 2018).  As the rule explains, "a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims."  29 C.F.R. § 2560.503-1(e)(2018).  Dr. Zall filed his claim for disability benefits in October 2013.

In a footnote, Dr. Zall declares without support that the new rules apply to Dr. Alpert's peer review issued on August 3, 2020, *see* Br. in Supp., dkt. 15, at n.4.  Nothing in the regulations suggests that a continuing eligibility review is a "request for a plan benefit made by a claimant[.]"  Accordingly, I conclude that the new claims procedures do not govern Dr. Zall's claim.  *Accord Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 86 (2d Cir. 2021) (amendments to ERISA rules effective in 2018 do not apply to claims filed before 2018); *Smith*, 421 F. Supp. at 420 ("Smith may have contested Continental and Hartford's handling of her [LTD] claim over the

13

past eighteen years, but she has made no new 'claim for benefits' for the purposes of § 2560.503-1.").

Dr. Zall does not argue that he was denied a full and fair review under the version of 29 C.F.R. § 2560.503-1(h)(4) that was in effect at the time he filed his claim. Circuit courts reviewing this prior version have uniformly held that it did "*not* require the claims administrator to produce documents developed or considered during the administrative appeal before rendering its final determination." *Mayer*, 9 F.4th at 86 (emphasis added) (following *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 436-37 (D.C. Cir. 2011); *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 895-96 (8th Cir. 2009); *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1245-46, (11th Cir. 2008); *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166-67 (10th Cir. 2007); *see also Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 310-11 (5th Cir. 2015); *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010); *Morningred v. Delta Family-Care & Survivorship Plan*, 526 F. App'x 217, 221 n.9 (3d Cir. 2013). Dr. Zall cites *Hughes v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 386, 401–02 (D. Conn. 2019), which held to the contrary, but as Standard points out, that case is no longer good law after the Second Circuit's decision in *Mayer*. Absent any other argument from Dr. Zall as to why I should deviate from the clear weight of circuit authority, I decline to do so. Under this authority, Standard was not obliged to produce Dr. Alpert's report to Dr. Zall before issuing its final decision, so his claim that he was denied a "full and fair review" fails.

## II. Reasonableness of Standard's Conclusion

Turning to the substance of Standard's decision, Dr. Zall argues that he produced sufficient evidence to show his limitations result from conditions that are excepted from the Other Limited Conditions limitation under the Group Policy, and that Standard's conclusion to the contrary is arbitrary and capricious.  I address each exception in turn:

### A. Herniated Disc With Neurological Abnormalities

To satisfy the Group Policy's exception for herniated disc, Dr. Zall was required to prove that, as of December 31, 2019, when his claim closed, he had a herniated disc with neurological abnormalities (1) documented by an EMG, and (2) documented by either MRI or CT.  There is no dispute that Dr. Zall never had a CT scan.  Dr. Zall argues, however, that his 2011 and 2014 MRIs "confirmed a cervical disc herniation," and that Dr. Truong's EMG study in 2014 provides the requisite EMG evidence.

Dr. Zall's evidence fails to show that Standard unreasonably determined that Dr. Zall did not qualify for the "herniated disc" exception.  First, as Standard points out, although the 2011 MRI showed a herniated disc at C5-C6, the most recent MRI from 2014 shows no herniated disc at any level.  Instead, it identified "multilevel degenerative disc disease," *i.e.* a "disease or disorder of the cervical spine," which under the Group Policy is a Limited Condition that limits payment of benefits to a 24-month period.  Although Dr. Zall's doctors, Dr. Truong and Dr. Robbins, stated in letters that Dr. Zall had herniated discs at C5-C6 and C6-C7, Standard's consulting physicians, Dr. Boodin and Dr. Alpert, concluded otherwise after reviewing the 2014 MRI.  Standard was entitled to credit the opinions of its consulting physicians over Dr. Zall's treating physicians so long as Standard's choice was "rationally supported by record evidence." *Black v.*

15

A015

*Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009).  The 2014 MRI report, which does not identify any herniated discs, provides rational support for the consulting physicians' conclusions.

Dr. Zall insists that the required MRI evidence of a herniated disc is established by the 2014 MRI's finding of a "shallow disc herniation or bulge" at C4-C5.  Although Standard asserts that Dr. Zall waived this claim by failing to raise it during the administrative proceedings, it is unnecessary to consider waiver because the claim fails regardless.  First, both Drs. Truong and Robbins said Dr. Zall had a herniated disk at the C5-C7 level, not at C4-C5.  Second, as Standard points out, Dr. Zall had to show a herniated disc "with neurological abnormalities."  Dr. Zall points to his 2014 EMG as providing the requisite positive results, but the EMG study did not document any neurological abnormalities at C4-C5, only at C7.  In other words, even assuming Dr. Zall has a herniated rather than a bulging disc at C4-C5[4], he cannot mix and

---

[4] As another court has explained:

It is critical to note that a bulging disc is not the same as a herniated disc. Bulging discs are more common, while herniated discs are more likely to cause pain. According to the Mayo Clinic's website:

> A bulging disk extends outside the space it should normally occupy. The bulge typically affects a large portion of the disk, so it may look a little like a hamburger that's too big for its bun. The part of the disk that's bulging is typically the tough outer layer of cartilage. Usually bulging is considered part of the normal aging process of the disk and is common to see on MRIs of people in almost every age group.

> A herniated disk, on the other hand, results when a crack in the tough outer layer of cartilage allows some of the softer inner cartilage to protrude out of the disk. The protrusion of inner cartilage in a herniated disk usually happens in one distinct area of the disk and not along a large component of the disk, which is more typical of a bulging disk. Herniated disks are also called ruptured disks or slipped disks.

*Zaccone v. Standard Life Ins. Co.*, 36 F. Supp. 3d 781, 797 (N.D. Ill. 2014) (quoting http://www.mayoclinic.org/diseases-conditions/herniated-disk/expert-answers/ bulging-disk/faq-20058428).

16

match:  he had to "show positive electromyogram results to go along with the MRI results and

diagnosis in order to avoid the policy limitation" for herniated disc.  *Wilcox v. Standard Ins. Co.*,

340 F. Supp. 2d 1266, 1283 (N.D. Ala. 2004) (addressing same policy language).  Dr. Zall's

EMG does not document a neurologic abnormality at C4-C5.  Accordingly, Standard reasonably

determined that he failed to satisfy the Group Policy's requirements for a herniated disc at C4-5

with neurological abnormalities documented by EMG.

## B.  Radiculopathy Documented by EMG

Dr. Zall has a stronger argument that he meets the exception to the Other Limited

Conditions limitation for "radiculopathies documented by electromyelogram."  His contention

is supported by the 2014 EMG study, which Dr. Truong found was consistent with an active,

chronic radiculopathy at C7.  Standard agues, however, that this evidence was insufficient to

show that Dr. Zall was still suffering from an active radiculopathy five years later when Standard

terminated Dr. Zall's LTD benefits, much less that it was disabling.

The administrative record provides ample support for Standard's conclusion that Dr. Zall

was not disabled by radiculopathy in December 2019:

> (1) The EMG did not show any ongoing "denervation," which
> would evidence nerve dysfunction, but instead showed
> "reinnervation," which suggests restoration of nerve function;
>
> (2) As noted by Drs. Boodin and Alpert, Dr. Zall consistently was
> found to have no motor loss, sensory changes or diminished
> reflexes, which one would expect if Dr. Zall had an active C7
> radiculopathy; instead, his examining doctors consistently found
> he had 5/5 strength in all of his upper extremity muscle groups,
> intact reflexes, no clinical evidence of nerve damage, only
> intermittent slightly decreased cervical range of motion, and little
> to no complaints of radicular pain;

17

(3) As Dr. Alpert observed, the 2014 MRI did not document any cervical nerve root impingement at C7 or any other level, which would be the usual finding seen in cervical radiculopathy;

(4) Dr. Hart opined that the raised arm and neck positions depicted on the FCE photographs that Dr. Zall said brought on his symptoms of pain and numbness were not consistent with radiculopathy; and

(5) Dr. Carlson found that Dr. Zall's examination findings were consistent with cervical radiculitis, which is an Other Limiting Condition.

Dr. Zall fails to show that Standard did not reasonably rely on this evidence or that it dismissed any of his supporting evidence out-of-hand in arriving at its decision to terminate his LTD benefits.

Dr. Zall argues Standard should have given more weight to the conclusions of his treating physicians, Dr. Truong and Dr. Robbins, who both diagnosed him with cervical radiculopathy, instead of those of its consulting physicians. However, the deferential standard of review requires that this court accept "[the administrator's] choice between competing medical opinions so long as it is rationally supported by record evidence." *Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 889 (7th Cir. 2012) (quoting *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009)). Here, the record provides rational support for Standard's decision. Notably, both Dr. Robbins and Dr. Truong said that Dr. Zall had herniated disks at C5-C7, but the 2014 MRI showed otherwise. Moreover, as Standard's physicians explained, neither physician documented any of the physical findings that one would expect to find if Dr. Zall truly had symptomatic radiculopathy. Finally, as Standard points out, neither Dr. Robbins nor Dr. Truong suggested that Dr. Zall's reported bouts of tingling and numbness in his fingers

18

could *not* be caused by his degenerative disc disease or carpal tunnel syndrome.[5]   A claims administrator does not act arbitrarily or capriciously when it rejects a treating physician's opinion that conflicts with the available objective evidence or is otherwise unreliable.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Dr. Zall next argues that Standard unreasonably relied on Dr. Boodin's opinion because she based it solely on Dr. Robbins' September 27, 2019 note stating that Dr. Zall's radiculitis had "primarily resolved," pointing out that Dr. Robbins later clarified that he was referring to a recent flare and not Dr. Zall's baseline "C7 radiculopathy."  Dr. Zall has mischaracterized Dr. Boodin's opinion.  As her report makes clear, she relied not just on the clinical notes from Dr. Zall's September 27, 2019 visit with Dr. Robbins but on earlier exams as well, explaining that they "all showed full strength, normal reflexes, and only slightly decreased cervical ROM."  As she (and Standard's other doctors) explained, such examination findings were "not consistent with symptoms of a cervical radiculopathy."

Although Dr. Zall points to his positive Spurling's tests as objective clinical support for a finding of radiculopathy, the last positive Spurling's test was by Dr. Robbins in April 2015, more than four years before Standard closed his claim.  No positive Spurling's test was documented at Dr. Zall's subsequent exams by Dr. Robbins on March 2, 2016, February 27, 2019, or September 27, 2019, and Dr. Zall denied radicular pain at his visit with Dr. Robbins on September 27, 2019.  In any case, the mere existence of some contrary evidence does not show that Dr. Boodin's opinion was unreliable or that Standard acted unreasonably in relying

---

[5] In his brief, Dr. Zall asserts that "if he was disabled by cervical disc disease alone, then he would not be expected to exhibit upper extremity impairments, such as impaired dexterity, fine motor skills, and general ability to use his upper extremity."  Dkt. 15, at 14.  However,  he fails to offer any medical support for this conclusion.

on it, particularly where three of its other consulting physicians agreed with her conclusion that the medical records did not support a finding of radiculopathy. "Raising debatable points does not entitle [the claimant] to a reversal under the arbitrary-and-capricious standard." *Sisto v. Ameritech Sickness and Accident Disability Benefit Plan*, 429 F.3d 698, 701 (7th Cir. 2005).

In another mischaracterization, Dr. Zall argues that Dr. Carlson, one of Standard's reviewing physicians, opined that he was disabled by radiculopathy. This is incorrect. As noted above, Dr. Carlson said no such thing: he said Dr. Zall's symptoms were consistent with *radiculitis*, and he further explained that radiculitis is an Other Limited Condition for disease or disorder of the spine. Contrary to Dr. Zall's unsupported suggestion, "radiculopathy and radiculitis are not interchangeable terms." *Marden v. Metro. Life Ins. Co.*, No. 1:11-CV-015, 2012 WL 2020931, at *12 (D.N.D. June 5, 2012) (citing Dorland's Illustrated Medical Dictionary 1405 (26th ed. 1988)). As the *Marden* court pointed out, radiculitis is an "inflammation" of a nerve root, while radiculopathy is a "disease" of the nerve root. *Id*. (citing *Dorland*'s.) Dr. Zall makes no argument that Standard misinterpreted the Group Policy in concluding that radiculitis was related to cervical DDD and thus an "Other Limited Condition" for which only 24 months of disability benefits were available.

Finally, Dr. Zall argues it was unreasonable for Standard to rely on Dr. Alpert's conclusion that Dr. Zall's numbness and tingling in his right hand "could" be caused by his confirmed carpal tunnel syndrome because her opinion was inconsistent with Dr. Zall's treatment records. I disagree. Dr. Truong's 2014 EMG and nerve conduction study provided objective support for a finding of carpal tunnel syndrome, and Dr. Zall does not deny that numbness, tingling, and weakness in the hand and arm are symptoms of that condition. *See*

https://www.mayoclinic.org/diseases-conditions/carpal-tunnel-syndrome/symptoms-causes/syc-20355603.  The mere fact that Dr. Robbins did not focus on that condition at any of the four visits by Dr. Zall in the four years after the EMG study does little to undercut Dr. Alpert's opinion.  After all, Dr. Zall was reporting few problems with his right arm during those visits. In any event, Standard, in its denial letter upholding its decision to close Dr. Zall's claim, explained that it had found Dr. Zall disabled "due to his cervical spine condition" and also "potentially" because of carpal tunnel syndrome.  AR 486.  As noted previously, the record rationally supports the conclusion of Standard's experts that Dr. Zall's limitations were caused or contributed to by his cervical DDD (an Other Limited Condition) and not by any cervical radiculopathy, so the addition of carpal tunnel syndrome doesn't really matter.

In sum, it was neither arbitrary nor capricious for Standard to conclude that Dr. Zall's disability was caused or contributed to by degenerative disc disease or carpal tunnel syndrome and not by a herniated disc or cervical radiculopathy.  Standard had Dr. Zall's claim reviewed by four board-certified physicians, all of whom thoroughly considered all of the available information and none of whom found sufficient evidence to support a conclusion that Dr. Zall's disability was caused by an excepted condition independent of an Other Limiting Condition as defined in the policy.  Dr. Zall has not identified any significant evidence that Standard ignored, he merely disputes the conclusions reached by its experts.  Under the arbitrary and capricious standard, Standard's decision to accept the opinions of its own experts "prevails if it has rational support in the record."  *Semine v. Life Ins. Co. of North America*, 436 F.3d 805, 812 (7th Cir. 2006). It does.  Accordingly, Standard is entitled to summary judgment in its favor.

21

## III.  Waiver

Finally, Dr. Zall suggests that Standard waived its right to find that his claim was subject to the Other Limited Conditions limitation by paying him benefits for more than six years after the date Standard now asserts his benefits should have ended.  This argument requires little discussion.  "ERISA does not prohibit a plan administrator from performing a periodic review of a beneficiary's disability status."  *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 767 (7th Cir. 2010); *see also Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 832 (7th Cir. 2009) (the previous payment of benefits "does not create a presumptive burden for the plan to overcome.").  Although the reasons for Standard's delay in reaching a final determination about Dr. Zall's claim are not clear, there is no evidence to suggest that it continued to pay Dr. Zall because it found that the Other Limited Conditions limitation did not apply.  Instead, Dr. Zall's file seems to have fallen through the cracks from late 2015 until June 2018, when Standard renewed its pursuit of Dr. Zall's updated medical records.  "A plan administrator is entitled to seek and consider new information and, in appropriate cases, to change its mind."  *Holmstrom*, 615 F.3d at 767.  As discussed above, the new information that Standard obtained indicated that Dr. Zall's disabling condition was subject to the Other Limited Conditions limitation, and Standard properly terminated his LTD benefits.

ORDER

IT IS ORDERED that:

1. Plaintiff Eric Zall's' motion for summary judgment, dkt. 14, is DENIED.

2. Defendant  Standard Life Insurance Company's motion for summary judgment, dkt. 17, is GRANTED.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 27th day of December, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

ERIC ZALL,

     Plaintiff,

                                   Case No.  21-cv-19-slc

  v.

STANDARD INSURANCE COMPANY,

     Defendant.

---

## JUDGMENT IN A CIVIL CASE

---

     IT IS ORDERED AND ADJUDGED that judgment is entered in favor of

defendant Standard Insurance Company against plaintiff Eric Zall dismissing this

case.

| | |
|---|---|
| s/ K. Frederickson, Deputy Clerk | December 27, 2021 |
| Peter Oppeneer, Clerk of Court | Date |

A024