No. 22-1096

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

ERIC S. ZALL

*Plaintiff-Appellant*

*vs.*

STANDARD INSURANCE COMPANY

*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
No. 3:21-cv-00019-slc
Magistrate Judge Stephen L. Crocker

## BRIEF OF DEFENDANT - APPELLEE
## STANDARD INSURANCE COMPANY

Jacqueline J. Herring
Counsel of Record
SMITH | VON SCHLEICHER + ASSOCIATES
180 North LaSalle St. Suite 3130
Chicago, Illinois 60601
P  312.541.0300
*Attorney for Defendant/Appellee*
*Standard Insurance Company*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 22-1096

Short Caption: Eric S. Zall v. Standard Insurance Company

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Standard Insurance Company

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Smith | von Schleicher & Associates

(3)　　If the party, amicus or intervenor is a corporation:

    i)　　Identify all its parent corporations, if any; and
        Standard Insurance Company has the following parent corporation(s):  StanCorp Financial Group, Inc., whose parent corporation is Meiji Yasuda Life Insurance Company, a mutual company.

    ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        No publicly held corporation owns 10% or more of Standard Insurance Company's stock

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Jacqueline J. Herring　　　　Date: April 21, 2022

Attorney's Printed Name:  Jacqueline J. Herring

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ☑　**No** ☐

Address:  Smith | von Schleicher & Associates, 180 North LaSalle Street, Suite 3130, Chicago, Illinois 60601

Phone Number: 312-541-0300　　　　　Fax Number:  312-541-0933

E-Mail Address: jackie.herring@svs-law.com

rev. 12/19 AK

**CERTIFICATE OF SERVICE**

I certify that on April 21, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Jacqueline J. Herring*
SMITH | VON SCHLEICHER + ASSOCIATES
180 N. LaSalle St. Suite 3130
Chicago, Illinois 60601
P  312.541.0300 | F  312.541.0933
jackie.herring@svs-law.com
Ill. Bar No. 6282246

**TABLE OF CONTENTS**

Table of Authorities ......................................................................................................... vi

Jurisdictional Statement .................................................................................................... 1

Issues Presented for Review ............................................................................................... 2

Statement of the Case ......................................................................................................... 3

Summary of the Argument ............................................................................................... 14

Argument............................................................................................................................ 16

    I.    Standard's Claim Determination was Reasonable and
        Not Arbitrary or Capricious .......................................................................... 16

        A.    Standard of appellate review ............................................................... 16

        B.    Zall's burden of proof for Other Limited Conditions ................................. 18

        C.    Standard reasonably determined Zall failed to satisfy any exception to
              Other Limited Conditions .................................................................. 20

            1.    Zall failed to establish he was Disabled by a herniated disc
                   in December 2019 ............................................................ 21

            2.    Zall failed to establish he was Disabled by radiculopathy
                   in December 2019 ............................................................ 25

    II.    Zall Fails to Establish any Violation of the Applicable ERISA Regulation ................. 31

        A.    Zall waived his claim of a regulatory violation................................................ 32

        B.    The 2018 amendments to the ERISA regulation do not apply to
              Zall's 2013 claim .............................................................................. 33

            1.    The 2018 amendments apply only to disability claims filed
                   after April 1, 2018................................................................ 33

            2.    Zall's 2013 claim is not subject to the 2018 amendments.......................... 36

        C.    Zall fails to establish any violation of the pre-2018 ERISA regulation .............. 40

            1.    Zall waived any claimed violation of the pre-2018 regulation by
                   failing to raise it in the district court........................................ 40

2. The pre-2018 regulation does not require "review and response" during the administrative appeal ....................................................... 41

Conclusion .............................................................................................................. 49

Certificate of Compliance ................................................................................... xii

Certificate of Service .......................................................................................... xiii

# TABLE OF AUTHORITIES

## CASES

*Balmert v. Reliance Standard Life Ins. Co.*,
601 F.3d 497 (6th Cir. 2010) ............................................................................ 42, 48

*Becker v. Chrysler LLC Health Care Benefits Plan*,
691 F.3d 879 (7th Cir. 2012) ....................................................................................31

*Black v. Long Term Disability Ins.*,
582 F.3d 738 (7th Cir. 2009) ............................................................................ 17, 29

*Black & Decker Disability Plan v. Nord*,
538 U.S. 822 (2003) ....................................................................................................30

*Bowen v. Georgetown Univ. Hosp.*,
488 U.S. 204 (1988) ....................................................................................................40

*Caldwell v. Standard Ins. Co.*,
No. 2:14-cv-25242, 2015 WL 5031485 (S.D. W.Va. Aug. 25, 2015) .................... 19-20, 24, 29

*Campos v. Cook Cnty.*,
932 F.3d 972 (7th Cir. 2019) ....................................................................................20

*Davis v. Unum Life Ins. Co. of Am.*,
444 F.3d 569 (7th Cir. 2006) ................................................................ 24, 28, 29, 30, 31

*Do v. Metro. Life Ins. Co.*,
No. 16-cv-05097-CW, 2018 WL 2021685 (N.D. Cal. May 1, 2018) ....................................18-19

*Dorris v. Unum Life Ins. Co. of Am.*,
949 F.3d 297 (7th Cir. 2020) ....................................................................................41

*Dragus v. Reliance Standard Life Ins. Co.*,
882 F.3d 667 (7th Cir. 2018) ................................................................ 16, 17, 32, 33, 42, 48

*Draper v. Martin*,
664 F.3d 1110 (7th Cir. 2011) ..................................................................................20

*Dutkewych v. Standard Ins. Co.*,
781 F.3d 623 (1st Cir. 2015) ....................................................................................19

*Exbom v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund*,
900 F.2d 1138 (7th Cir. 1990) ..................................................................................17

*Feggins v. Reliance Standard Life Ins. Co.*,
No. 11-cv-073-wmc, 2013 WL 4782726 (W.D. Wis. Sept. 6, 2013) .........................................48

*Fessenden v. Reliance Standard Life Ins. Co.*,
927 F.3d 998 (7th Cir. 2019) ...........................................................................................37

*Firestone Tire & Rubber Co. v. Bruch*,
489 U.S. 101 (1989) ......................................................................................................16

*Fischer v. Liberty Life Assur. Co. of Boston*,
576 F.3d 369 (7th Cir. 2009) ...........................................................................................30

*Frye v. Thompson Steel Co., Inc.*,
657 F.3d 488 (7th Cir. 2011) ...........................................................................................20

*Gebert v. Thrivent Fin. for Luth. Grp. Dis. Income Ins. Plan*,
No. 13-C-170, 2013 WL 6858531 (E.D. Wis. Dec. 30, 2013) .......................................48

*Geiger v. Aetna Life Ins. Co.*,
845 F.3d 357 (7th Cir. 2017) ................................................................................17, 18, 25

*Glazer v. Reliance Standard Life Ins. Co.*,
524 F.3d 1241 (11th Cir.), *cert. denied*, 555 U.S. 1048 (2008) ...................... 41, 45, 46, 47, 48

*Houston v. Provident Life & Acc. Ins. Co.*,
390 F.3d 990 (7th Cir. 2004) ...........................................................................................24

*Hughes v. Hartford Life & Acc. Ins. Co.*,
368 F. Supp. 3d 386 (D. Conn. 2019) ...............................................................................42

*Jette v. United of Omaha Life Ins. Co.*,
18 F.4th 18 (1st Cir. 2021) .................................................................... 33, 34, 37, 46, 48

*Killen v. Reliance Standard Life Ins. Co.*,
776 F.3d 303 (5th Cir. 2015) .....................................................................................41, 48

*Leger v. Trib. Co. Long Term Dis. Ben. Plan*,
557 F.3d 823 (7th Cir. 2009) ...........................................................................................18

*Lloyd v. Procter & Gamble Dis. Benefit Plan, Plan #501*,
No. 20-4329, 2021 WL 4026683 (6th Cir. Sept. 3, 2021) .............................................33

*Majeski v. Metro. Life Ins. Co.*,
590 F.3d 478 (7th Cir. 2009) ...........................................................................................17

*Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*,
687 F.3d 320 (7th Cir. 2012) ............................................................................28

*Marden v. Metro. Life Ins. Co.*,
No. 1:11-cv-015, 2012 WL 2020931 (D. N.D. June 5, 2012) ....................................6, 28

*Martin v. Guardian Life Ins. Co. of Am.*,
No. 5:20-507-DCR, 2021 WL 2516083 (E.D. Ky. June 15, 2021) ................................37

*Mayer v. Ringler Assoc. Inc.*,
9 F.4th 78 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1120 (2022) .......36, 41, 42, 45, 47, 48, 49

*Metzger v. Unum Life Ins. Co. of Am.*,
476 F.3d 1161 (10th Cir. 2007) ................................................ 41, 45, 46, 47, 48

*Midgett v. Wash. Grp. Int'l. Long Term Dis. Plan*,
561 F.3d 887 (8th Cir. 2009) ...........................................41, 42, 45, 46, 47, 48, 49

*Mitchell v. Lucent Tech. Inc. Pension Plan*,
No. 17-cv-8097, 2019 WL 1077128 (N.D. Ill. Mar. 7, 2019) ...................................33

*Moore v. Metro. Life Ins. Co.*,
No. 18-5325, 2019 WL 1499337 (6th Cir. Jan. 3, 2019) .......................................36

*Morningred v. Delta Family-Care & Survivorship Plan*,
526 F. App'x 217 (3rd Cir. 2013) ........................................................ 41-42, 48

*Mote v. Aetna Life Ins. Co.*,
502 F.3d 601 (7th Cir. 2007) ........................................................ 28-29, 30

*Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*,
644 F.3d 427 (D.C. Cir. 2011) ............................................................41

*Ruttenberg v. U.S. Life Ins. Co.*,
413 F.3d 652 (7th Cir. 2005) ............................................................18

*Shipley v. Chicago Bd. of Election Comm'rs*,
947 F.3d 1056 (7th Cir. 2020) ............................................................20

*Smith v. Hartford Life & Acc. Ins. Co.*,
421 F. Supp. 3d 416 (E.D. Ky. 2019) ......................................................36

*Ten Pas v. Lincoln Nat'l Life Ins. Co.*,
___ F.4th ___, 2022 WL 1074533 (7th Cir. Apr. 11, 2022) ..............................16, 20, 41

*Univ. of Wis. Hosp. & Clinics, Inc. v. Air Prods. & Chems., Inc.*,
No. 14-cv-803-wmc, 2018 WL 2025658 (W.D. Wis. May 1, 2018)..........................................48

*U.S. v. Sheth*,
924 F.3d 425 (7th Cir. 2019) .................................................................................................................20

*Williams v. Bd. of Educ. of City of Chicago*,
982 F.3d 495 (7th Cir. 2020) .................................................................................................................20

*Williams v. Standard Ins. Co.*,
No. 1:15-cv-00416-DAD-EPG, 2017 WL 1398819 (E.D. Cal. Apr. 19, 2017)........................18

*Windbiel v. Grp. Short Term Dis.*,
No. 09-C-139, 2010 WL 2720000 (E.D. Wis. July 7, 2010).........................................................48

*Zaccone v. Standard Life Ins. Co.*,
36 F. Supp. 3d 781 (N.D. Ill. 2014) ........................................................................................18, 22, 23

## STATUTES AND RULES

5 U.S.C. §552(a).........................................................................................................................................34

5 U.S.C. §553(b).........................................................................................................................................34

5 U.S.C. §553(c).........................................................................................................................................34

5 U.S.C. §553(d).........................................................................................................................................35

28 U.S.C. §636(c)(3) ..............................................................................................................................1, 2

28 U.S.C. §1291 ...........................................................................................................................................2

28 U.S.C. §1331 ...........................................................................................................................................1

29 C.F.R. §2560.503-1(e).......................................................................................................................36

29 C.F.R. §2560.503-1(g)(v) (2002) ..................................................................................................38

29 C.F.R. §2560.503-1(h)(2)(iii) (2002) .............................................................................46, 47, 48

29 C.F.R. §2560.503-1(h)(3)(iii) (2002) ..........................................................................................47

29 C.F.R. §2560.503-1(h)(4) (2002) ...........................................................14, 34, 38, 39, 41, 45

29 C.F.R. §2560.503-1(h)(4)(i) (2018) ..................................................................................34, 37, 40

29 C.F.R. §2560.503-1(h)(4)(ii) (2018) .................................................................40

29 C.F.R. §2560.503-1(i)(5) (2002) .......................................................................46

29 C.F.R. §2560.503-1(l) (2002) ...........................................................................32

29 C.F.R. §2560.503-1(p) (2018) ..........................................................................37

29 C.F.R. §2560.503-1(p)(3) (2018) ......................................................................37

29 C.F.R. §2560.503-1(p)(4) (2018) ...................................................37, 38, 39, 40

29 C.F.R. §2560.503-1(p)(4)(i) (2018) ...................................................................38

29 C.F.R. §2560.503-1(p)(4)(ii) (2018) ..........................................................38, 39

29 U.S.C. §1001 *et seq.* .........................................................................................1

29 U.S.C. §1132(a)(1)(B) .........................................................................................1

29 U.S.C. §1132(e)(1) ..............................................................................................1

29 U.S.C. §1132(f) ...................................................................................................1

29 U.S.C. §1133 ...............................................................................................33, 40

29 U.S.C. §1135 ...............................................................................................33, 40

Fed. R. App. P. 3 .......................................................................................................2

Fed. R. App. P. 4 .......................................................................................................2

Fed. R. App. P. 28(a)(8)(A) ....................................................................................20

Fed. R. Civ. P. 73(c) ............................................................................................1, 2

**FEDERAL REGISTER[1]**

Claims Procedure for Plans Providing Disability Benefits,
80 Fed. Reg. 72,014 (Nov. 18, 2015) ........................................................34, 35, 43

---

[1] For ease of reading, citations to the Federal Register in the Argument section of the Brief are to only the Volume, page and date.

Claims Procedure for Plans Providing Disability Benefits,
81 Fed. Reg. 92,316 (Dec. 19, 2016) ................................................................34, 35, 42, 43

Claims Procedure for Plans Providing Disability Benefits,
Extension of Applicability Date
82 Fed. Reg. 47,409 (Oct. 12, 2017) ................................................................35, 38, 39, 43

Claims Procedure for Plans Providing Disability Benefits,
90-Day Delay of Applicability Date
82 Fed. Reg. 56,560 (Nov. 29, 2017) .................................................. 35, 36, 37, 38, 39, 43

Employee Retirement Income Security Act of 1974; Rules and Regulations for
Administration and Enforcement; Claims Procedure,
63 Fed. Reg. 48,395 (Sept. 9, 1998) ............................................................................ 44, 47

Employee Retirement Income Security Act of 1974; Rules and Regulations for
Administration and Enforcement; Claims Procedure,
65 Fed. Reg. 70,246 (Nov. 21, 2000) ............................................................................ 37, 47

**JURISDICTIONAL STATEMENT**

The Jurisdictional Statement of Plaintiff-Appellant Eric S. Zall is not complete and correct.  The district court had jurisdiction over the parties and over the subject matter of this action pursuant to 29 U.S.C. §1132(e)(1), 29 U.S.C. §1132(f), and 28 U.S.C. §1331, because this lawsuit involves a claim for payment of disability benefits under an employee welfare benefit plan, insured under the terms of a group long-term disability insurance policy ("Group Policy") issued by Defendant-Appellee Standard Insurance Company ("Standard") and governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq*. ("ERISA").  Zall brought suit against Standard under 29 U.S.C. §1132(a)(1)(B) seeking payment of benefits under the Group Policy.

Zall and Standard each consented in writing to the jurisdiction of the United States Magistrate Judge to conduct any and all proceedings, including entry of a final judgment, pursuant to 28 U.S.C. §636(c) and Fed. R. Civ. P. 73(a).  (R.11-1; R.11-2).[2]  On March 17, 2021, Judge James D. Peterson assigned the case to Magistrate Judge Stephen L. Crocker, pursuant to the parties' written consent.  (R.11).

On December 27, 2021, the district court entered an Opinion and Order, granting judgment in favor of Standard and against Zall, and the clerk entered a Judgment in a Civil Case, entering final judgment for Standard.  (A001-23; A024).

---

[2] Citations to "R.__" are to the docket number in the Record on Appeal.  Citations to "A__" are to Zall's Short Appendix.  Citations to "AR__" are to the administrative record filed June 11, 2021, to the last six digits in the Bates number beginning "STND 2021-02642-."  (R.13-1 to 13-10).  Because the parties proceeded by consent, references to the "district court" are to the magistrate judge.

On January 20, 2022, Zall filed his Notice of Appeal to the United States Court of Appeals for the Seventh Circuit, appealing the December 27, 2021 decision of the district court granting judgment for Standard.  (R.27).

The United States Court of Appeals for the Seventh Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 and 28 U.S.C. §636(c)(3), and in accordance with Fed. R. App. P. 3, Fed. R. App. P. 4, and Fed. R. Civ. P. 73(c), based on Zall's Notice of Appeal, because this case involves an appeal from a final judgment issued by the district court.

## ISSUES PRESENTED FOR REVIEW

1.   Whether the district court, applying ERISA's arbitrary and capricious standard, correctly entered judgment for Standard where substantial evidence supports Standard's determination that Zall failed to establish he was Disabled by a condition that is not subject to the Group Policy's 24-month maximum benefit period for Disabilities Subject to Limited Pay Periods.

2.   Whether the 2018 amendments to the ERISA regulation apply to Zall's claim that was filed in 2013, when the Federal Register specifies that the Applicability Date for the 2018 amendments is to claims for disability benefits filed with the plan after April 1, 2018.

3.   Whether the pre-2018 ERISA regulation mandates that Standard provide Zall with a consulting physician report generated during the administrative appeal prior to issuing its determination to uphold the adverse benefit determination when no such requirement is included in the pre-2018 version of the ERISA regulation.

4.   Whether Zall waived his arguments regarding the alleged regulatory violation by failing to timely assert his arguments and failing to raise his arguments in the district court.

## STATEMENT OF THE CASE

### Nature of the Case

Zall filed this lawsuit to obtain payment of disability benefits under an employee welfare benefit plan governed by ERISA and insured by Standard under the Group Policy. Standard closed Zall's claim based on the Group Policy's provision for Disabilities Subject to Limited Pay Periods, which establishes a maximum benefit period of 24 months for Disabilities caused or contributed to by diseases or disorders of the back and other specified conditions. The district court, applying ERISA's arbitrary and capricious standard, held that Standard's decision was rationally supported by the administrative record and Group Policy's terms, and entered judgment for Standard. (A001-24).

### Key Terms of the Group Policy

Zall, a self-employed dentist, obtained long-term disability insurance coverage under the Group Policy through his dental practice. (R.13-7, AR001832). The Group Policy's Definition of Disability requires that Zall establish he is "unable to perform with reasonable continuity the Material Duties of your Own Occupation." (R.13-1, AR000011, 5).

The Group Policy's provision for Disabilities Subject to Limited Pay Periods establishes a maximum benefit period of 24 months during an insured Member's lifetime for a Disability "caused or contributed to by" Other Limited Conditions. (R.13-1, AR000020-21). Other Limited Conditions include chronic pain conditions, "carpal tunnel or repetitive motion syndrome," "arthritis, diseases or disorders of the cervical, thoracic, or lumbosacral back and its surrounding soft tissue, and sprains or strains of joints or muscles." (R.13-1, AR000021). Other Limited Conditions does not include "herniated discs with neurological abnormalities that are documented by electromyogram [EMG] and computerized

3

tomography [CT] or magnetic resonance imaging [MRI]," or "radiculopathies that are documented by electromyogram." (R.13-1, AR000021).

The Group Policy's Rules For Disabilities Subject To Limited Pay Periods specify that "No LTD Benefits will be payable after the end of the limited pay period, unless on that date you continue to be Disabled as a result of a Physical Disease, Injury, or Pregnancy for which payment of LTD Benefits is not limited." (R.13-1, AR000021). The Group Policy obligates Zall to provide Proof Of Loss, which "means written proof that you are Disabled and entitled to LTD Benefits." (R.13-1, AR000022).

The Group Policy's Allocation of Authority grants to Standard "full and exclusive authority" to determine eligibility for coverage and entitlement to benefits, to administer claims, to interpret the Group Policy's terms, and to decide "the sufficiency and the amount of information we may reasonably require to determine" entitlement to benefits. The Group Policy specifies that Standard's decisions are "conclusive and binding." (R.13-1, AR000024).

## Zall's Disability Claim

On October 18, 2013, at age 48, Zall signed claim forms seeking payment of disability benefits under the Group Policy. (R.13-7, AR001832-1837). Although he had not seen any physicians for two years, Zall asserted that pain and numbness in his neck and right arm prevented him from working as a dentist. (R.13-7, AR001832; R.13-6, AR001405).

One week after Zall signed his disability claim forms, on October 25, 2013, his treating orthopedist Dr. Stephen E. Robbins, documented that Zall's symptoms "do not prevent him from performing his usual activities as a dentist." Dr. Robbins noted that Zall should "continue employment as tolerated" and be re-evaluated as needed, and that "He does not

require any further studies at this time." (R.13-6, AR001404). Less than two weeks later, on November 5, 2013, with no intervening office visits or change in Zall's condition, Dr. Robbins signed an Attending Physician's Statement for Zall, opining that he was unable to work as of November 5, 2013. (R.13-6, AR001516-1517).

Standard, after evaluating Zall's sparse and inconsistent evidence, initially denied Zall's claim on March 10, 2014, finding that the evidence failed to support his claim of Disability. (R.13-2, AR000545-550).

On August 28, 2014, Zall, through counsel, submitted his administrative appeal and provided additional documentation. (R.13-7, AR001691-1702; R.13-6, AR001387-1396, 1431-1465). Notably, Zall had a functional capacity evaluation ("FCE") on April 29, 2014, arranged by his attorney. (R.13-6, AR001436-1455). The FCE noted Zall's complaints of diminished dexterity in his right hand and numbness and tingling in his right arm after a few minutes of maintaining his arm in a static raised position, while reaching from a seated position to do dental work, as depicted in photographs taken at the FCE. (R.13-6, AR001436, 1441, 1443, 1447, 1452-1453).

On November 19, 2014, Standard, upon review of the additional information and consultation with a board certified orthopedic surgeon, approved and began paying Zall's claim, with a date of Disability commencement of November 1, 2013. (R.13-7, AR001681-1682, 1671; R.13-2, AR000536-539; R.13-8, AR002048).

In August 2015, Standard initiated review of whether Zall's claim was limited by the 24-month provision for Other Limited Conditions. Standard's evaluation included consultation with two physicians board certified in physical medicine and rehabilitation, Dr. Hans Carlson and Dr. John Hart. (R.13-6, AR001295-1298, 1310-1314, 1477, 1555, 1315). Dr.

Carlson concluded that Zall has degenerative changes in his cervical spine with clinical exam findings that were "without any focal neurologic deficits with intact strength and reflexes," and are "consistent with cervical radiculitis," which is "a disease or disorder of the cervical, thoracic, lumbosacral back and surrounding soft tissues and sprain or strain of joint or muscle." (R.13-6, AR001296-1297).

Dr. Hart explained that the physical examination findings, the photographs from the FCE, and Zall's complaints of numbness from raised arms and reaching, were not consistent with a cervical radiculopathy. (R.13-6, AR001311-1313, 1352-1353). The opinions from Dr. Carlson and Dr. Hart are further supported by Dr. Robbins's opinion at his examination of Zall on February 14, 2014, that Zall's "symptoms are not suggestive of radiculopathy," as well as Dr. Robbins's documentation that Zall denied radicular pain at office visits in 2014. (R.13-6, AR001401, 1352-1353).

Both Dr. Carlson and Dr. Hart noted that the medical records refer to a recent EMG and MRI that were not included in the records made available to Standard. (R.13-6, AR001296-1297, 1313). Dr. Carlson stated that the MRI and EMG should be obtained and evaluated to address "the question of radiculopathy." (R.13-6, AR001297).[3]

Importantly, the Group Policy's exceptions to Other Limited Conditions specifically require documentation by EMG and by MRI. (R.13-1, AR000021). Zall's MRI and EMG were not immediately obtained, and Standard continued to pay benefits to Zall for the next

---

[3] Radiculitis and radiculopathy are different conditions. Radiculitis is an inflammation of the nerve, whereas radiculopathy is disease of the nerve root. (A020) (citing *Marden v. Metro. Life Ins. Co.*, No. 1:11-cv-015, 2012 WL 2020931, at *12 (D. N.D. June 5, 2012) ("radiculopathy and radiculitis are not interchangeable terms") (citing *Dorland's Illustrated Medical Dictionary* 1405 (26th ed. 1988)).

several years, with no determination of whether his claim was limited by the Group Policy's provision for Other Limited Conditions.  (R.13-3, AR000573-574; R.13-7, AR001548).

### Zall's Limited Treatment Records

In June 2018, Standard evaluated Zall's current functional capabilities and whether his claim was limited by Other Limited Conditions.  Over the next eighteen months, Standard repeatedly sought to obtain updated medical records and the EMG, and requested that Zall's attorney assist in obtaining the records.  (R.13-6, AR001275-1277, 1268-1269, 1265-1266. 1255-1556; R.13-7, AR001574, 1568-1569, 1564-1565, 1550, 1859; R.13-2, AR000505).

When Standard obtained the requested records, the medical evidence was scant.  Zall did not see any physician in the three years from March 2016 to February 2019, and had no imaging or objective tests after the EMG and cervical MRI in late 2014, five years earlier.  (A007-8; R.13-6, AR001283-1285, 1288-1290, 1272-1274, 1280, 1252, 1401-1409, 1320-1347, 1411-1429, 1398-1399, 1350-1353, 1366-1368, 1436-1455, 1488-1498, 1502-1513).

Since Standard's approval of his claim in 2014, Zall had only four office visits with any physician, with Dr. Robbins on April 15, 2015, March 2, 2016, February 27, 2019, and September 27, 2019.  (A008; R.13-6, AR001350, 1280; R.13-5, AR001260, 1252).  At all four visits, Dr. Robbins's clinical examinations documented that Zall had full 5/5 strength in all upper extremity muscle groups, and full range of motion in his cervical spine, other than one notation of "slightly decreased" range of motion in September 2019.  (R.13-6, AR001350, 1280; R.13-5, AR001260, 1252).  At the examinations at which it was recorded,

Zall had intact reflexes, no clinical evidence of nerve damage, and little to no complaints of radicular pain. (R.13-6, AR001350, 1280; R.13-5, AR001260, 1252).

Notably, at the last visit on September 27, 2019, Dr. Robbins documented that Zall "has some residual numbness in his shoulder, but no radicular pain extending down the arm." Dr. Robbins concluded Zall "probably has a diagnosis of degenerative disk disease with cervical radiculitis that has resolved." Zall had "a history of right arm pain, numbness and tingling," however, "[a]t the present time, the symptoms have primarily resolved and he does not have any significant residuals." (R.13-5, AR001252).

Zall's only EMG was from December 12, 2014, and his most recent cervical MRI was on November 24, 2014. (R.13-6, AR001283-1285, 1288-1290, 1272-1274). He had no subsequent imaging or objective testing. The November 2014 MRI concluded Zall had "multilevel degenerative disc disease" and degenerative foraminal narrowing. The interpretation and diagnostic impression from the MRI did not identify any herniated discs. (R.13-6, AR001283-1284).

Dr. Trinh G. Truong saw Zall on December 12, 2014 and administered the EMG. (R.13-6, AR001288-1290, 1272-1274). Dr. Truong noted that Zall had "muscle membrane irritability and reinnervation changes found in the distribution of the right C7 root, consistent with radiculopathy." He concluded there was "electrodiagnostic evidence for a chronic active right C7 radiculopathy" and for "mild carpal tunnel syndrome" on the right. (R.13-6, AR001273). Dr. Truong further noted that the EMG/NCS results were "consistent with neuralgia, neuritis, and radiculitis, unspecified." (R.13-6, AR001290). Dr. Truong's physical examination of Zall documented full 5/5 strength in his shoulders, elbows, wrists, hands, biceps and triceps. (R.13-6, AR001289).

**Standard's Application of the Group Policy's
Provision For Other Limited Conditions to Close Zall's Claim**

To evaluate the medical evidence and the nature of Zall's conditions, Standard consulted Natalie E. Boodin, M.D., who is board certified in physical medicine and rehabilitation. (R.13-5, AR001241-1247).  In her December 6, 2019 report, Dr. Boodin concluded that the only condition causing functional limitations for Zall was his degenerative disc disease. (R.13-5, AR001243-1244).  Dr. Boodin opined that cervical degenerative disc disease "is a disease or disorder of the cervical, thoracic, or lumbosacral back and its surrounding soft tissue." (R.13-5, AR001243).

Dr. Boodin acknowledged that the December 2014 EMG noted "a chronic C7 Radiculopathy," but explained that all of Zall's physical examinations showed "full strength, normal reflexes, and only slightly decreased cervical" range of motion.  "This is not consistent with symptoms of a cervical radiculopathy." (R.13-5, AR001244).  Although cervical radiculopathy was noted in Zall's records, Dr. Boodin opined that it did not result in any functional impairment.  (R.13-5, AR001243-1244).  In other words, there was no Disability due to radiculopathy.  Dr. Boodin also concluded the medical records failed to evidence any herniated discs.  (R.13-5, AR001243-1244).

Standard determined that Zall's functional limitations were due to his cervical degenerative disc disease, and thus his claim was subject to the 24-month maximum benefit period for Other Limited Conditions.  (R.13-6, AR001548).  Although Zall had received four additional years of benefit payments, from January 2016 to December 2019, Standard did not seek recovery of the overpaid benefits due to the delay in obtaining medical records and evaluating that evidence in conjunction with the Group Policy's limitation.  (R.13-6, AR001548; R.13-2, AR000500).

On December 27, 2019, Standard notified Zall, through his attorney, that his claim would close with payment through December 31, 2019, and no further benefits were payable pursuant to the Group Policy's provision for Disabilities Subject to Limited Pay Periods, a copy of which was provided with the determination letter.  (R.13-2, AR000498-502).  Standard explained that Zall's cervical degenerative disc disease falls within Other Limited Conditions, and that the medical evidence fails to support that he was Disabled by conditions not subject to the limitation.  (R.13-2, AR000500).

Standard advised Zall of his right to request an administrative review, notified him of his right to submit additional evidence in support of his claim, and specified that the information should include medical evidence that Zall "continues to meet the Definition Of Disability for a condition or conditions that are not subject to the Disabilities Subject To Limited Pay Periods provision of the Group Policy."  (R.13-2, AR000501).

### Zall's Administrative Appeal

On June 10, 2020, Zall, through counsel, administratively appealed Standard's closure of his claim.  (R.13-1, AR000050-57).  Zall argued that his disabling condition satisfied an exception to Other Limited Conditions, specifically for "C5-6 and C6-7 disc herniations documented by his November 25, 2014 MRI" and C7 radiculopathy noted in the December 2014 EMG.  (R.13-1, AR000052-53).  The only additional information Zall submitted with his appeal were short opinion letters from Dr. Truong and Dr. Robbins.  (R.13-1, AR000056-57).  No additional medical records were provided.  There is no evidence that Zall saw any physician after September 2019 or had any updated objective imaging or testing by MRI, CT or EMG after 2014.

Dr. Truong had not seen Zall since he administered the EMG more than five years earlier in 2014.  In his single paragraph April 23, 2020 letter, Dr. Truong simply listed findings he extrapolated from the 2014 EMG and MRI, including "C56 C67 disk herniation" from the MRI, and "C7 radiculopathy" and carpal tunnel syndrome from the EMG, and concluded Zall's lack of dexterity "would make it unsafe for him to operate a surgical instrument." (R.13-1, AR000057).

Dr. Robbins, in his April 2, 2020 opinion letter, stated that Zall "has Degenerative Disc Disease with severe foraminal narrowing at C5-6, C6-7 with Herniated disc at C6-7 resulting in Rt C7 radiculopathy."  Dr. Robbins noted Zall's complaints of right arm pain and tingling in his right hand and concluded that Zall was unable to "safely function as a dentist."  (R.13-1, AR000056).

Importantly, although both Dr. Robbins and Dr. Truong as well as Zall's attorney asserted that the November 2014 cervical MRI showed disc herniations at C5-6 and/or C6-7, this assertion is not correct.  The 2014 MRI does not identify any disc herniations at C5-6 or C6-7.  (R.13-6, AR001283-1285).  The MRI interpretation noted "minor degenerative retrolisthesis" and "degenerative disc disease," with normal marrow signal and no myelomalacia.  (R.13-6, AR001283).  The impression from the MRI identified "multilevel degenerative disc disease," "degenerative spinal canal narrowing," and "degenerative foraminal stenosis."  (R.13-6, AR001284).  Findings documented at the specific levels of C5-6 and C6-7 failed to reveal any herniated discs.  (R.13-6, AR001284).

In addition, Dr. Robbins and Dr. Truong failed to correlate the claimed functional limitations directly to any condition that falls within the Group Policy's exception to Other Limited Conditions.  They did not distinguish functional limitations caused by Zall's Other

Limited Conditions, including his degenerative disc disease and carpal tunnel syndrome, from any purported limitations that Zall contends should be attributed to disc herniations or radiculopathy as required to establish Disability caused by an exception to Other Limited Conditions.  (R.13-1, AR000056-57).

### Standard's Determination on Administrative Appeal

To evaluate the medical evidence on appeal, Standard consulted Michelle Alpert, M.D., who is board certified in physical medicine and rehabilitation, with additional expertise in spinal cord injury medicine.  Dr. Alpert analyzed the medical evidence, conferred with Dr. Robbins, and prepared a report, dated August 3, 2020.  (R.13-1, AR000061-65).  Dr. Alpert identified Zall's diagnoses as "degenerative disc disease of the cervical spine, chronic neck pain, right shoulder pain and numbness in the right hand."  (R.13-1, AR000064).  Dr. Alpert concluded that "As of January 2020, there is no support for diagnoses of either cervical radiculopathy or a cervical herniated disc with neurologic abnormalities."  (R.13-1, AR000064).

Dr. Alpert opined that the EMG showed only a finding of "chronic C7 radiculopathy with no ongoing denervation and his examination has never revealed the corresponding C7 motor loss in the triceps or sensory loss in the C7 dermatomal distribution, nor a reduced or absent right triceps reflex."  (R.13-1, AR000064).  "These are the expected findings if the claimant truly had the neurologic abnormalities consistent with C7 radiculopathy," which Zall did not have.  (R.13-1, AR000064).  Instead, Zall's clinical exams documented full strength in his upper extremities and no dermatomal sensory loss.  (R.13-1, AR000064).

Dr. Alpert further concluded that "not only have his cervical MRI reports never indicated that there was any herniated disc seen, just foraminal narrowing has been described, but

there was also never any mention of cervical nerve root impingement seen, which would be the usual MRI finding seen in cervical radiculopathy." (R.13-1, AR000064). Zall also had no updated MRI since 2014, "likely because his neurologic examination has remained nonfocal." (R.13-1, AR000062). Zall's symptom complaints were of "right sided neck pain that intermittently radiated down his arm to his thumb and first three fingers or that was associated with right shoulder numbness." (R.13-1, AR000064). "These complaints are not pathognomonic for cervical radiculopathy since the sensory changes he described in his right hand can also be due to carpal tunnel," as found on the 2014 EMG. (R.13-1, AR000064).

Dr. Alpert concluded that there is "no medical evidence to support the presence of a cervical radiculopathy or cervical herniated disc" as of January 2020 when Standard closed Zall's claim and stopped paying benefits. (R.13-1, AR000064).

Standard upheld on administrative appeal the decision to close Zall's claim based on the 24-month maximum benefit period for Disability caused or contributed to by Other Limited Conditions. (R.13-2, AR000483-487). Standard explained that Zall's clinical examinations did not reveal "neurologic deficits consistent with symptoms of a cervical radiculopathy or cervical herniated disc." (R.13-1, AR000486). Additionally, "the findings of the electrodiagnostic testing and imaging from 2014, when considered in the context of the minimal examination findings and treatment, did not provide support for Dr. Zall having a cervical radiculopathy or cervical herniated disc resulting in symptoms severe enough to cause him to be Disabled as of January 1, 2020." (R.13-1, AR000486). Standard, therefore, determined that Zall's claim was properly limited to 24 months under the Group Policy's provision for Other Limited Conditions. (R.13-1, AR000486).

### The District Court's Entry of Judgment for Standard

Zall initiated this litigation, and the parties filed cross motions for summary judgment in the district court.  (A001-2; R.14; R.17).  The district court held that Standard's determination to apply the Group Policy's provision for Disabilities Subject to Limited Pay Periods to close Zall's claim was reasonable, rationally based on the evidence, and not arbitrary or capricious.  (A015-21).  Standard reasonably determined that Zall failed to establish he was Disabled by either a herniated disc or radiculopathy.  (A015, 17, 21).

The district court also rejected Zall's argument, under the 2018 version of the ERISA regulation, that he was denied a full and fair review because he was not provided a copy of Dr. Alpert's report for his rebuttal before Standard's final determination on administrative appeal.  (A013-14).  The district court held that the 2018 amendments to the ERISA regulation did not apply to Zall's claim that was filed in 2013.  (013-14).  The district court further held that "Zall does not argue that he was denied a full and fair review under the version of 29 C.F.R. § 2560.503-1(h)(4) that was in effect at the time he filed his claim." (A014).  Accordingly, Zall's "claim that he was denied a 'full and fair review' fails."  (A014).

The district court granted Standard's motion, denied Zall's motion, and entered judgment for Standard.  (A023-24).

### SUMMARY OF THE ARGUMENT

The Group Policy grants discretionary authority to Standard, triggering judicial review under the arbitrary and capricious standard.  Applying the arbitrary and capricious standard, Standard's claim determination prevails because it has rational support in the administrative record.

Standard reasonably determined that Zall, at the time his claim closed in December 2019, failed to provide the requisite electrodiagnostic evidence of a cervical herniated disc or radiculopathy, and that he also failed to provide evidence he was Disabled due to a herniated disc or radiculopathy, both of which are required to receive benefits beyond 24 months under the Group Policy's terms.  Standard consulted four board certified physicians, who concluded that the evidence failed to support that Zall was Disabled by radiculopathy or by a herniated disc.  Zall, to support his claim, offered only the opinions of his treating physicians that were directly refuted by the objective MRI, and inconsistent with the clinical findings.

Standard's determination to close Zall's claim is rationally supported by the terms of the Group Policy and the medical evidence, including the objective tests, clinical examination findings, and the opinions of the four consulting physicians.  Zall, in his Brief, offers little beyond conclusory assertions unsupported by the record, and thus fails to satisfy his burden to establish that Standard's determination was arbitrary or capricious.

Unable to satisfy his burden on the merits, Zall accuses Standard of violating ERISA regulations and denying him a full and fair review.  He laments that he was not given a copy of the consulting physician's report prepared during his administrative appeal for his rebuttal before Standard's final determination.  Notably, Zall never requested a copy of the report during the administrative review.

Zall's argument fails.  Zall relies on a regulatory requirement in a 2018 amendment to the ERISA regulation that applies only to claims filed after April 1, 2018, and does not apply to Zall's claim, filed in 2013.  The pre-2018 regulation that applies to Zall's claim does not require administrators to provide medical reports to claimants for response during the

administrative review process before the final decision.  Standard complied with the applicable regulations and provided Zall a full and fair review.

Zall further waived any claimed violation of the regulatory requirements by failing to pursue his argument during the administrative review proceedings.  Moreover, Zall never argued in the district court that ERISA's regulation in effect *prior to* April 2018 required that Standard provide to Zall a consulting physician's report obtained during the administrative appeal before reaching a final decision on appeal.

The evidence provides rational support for Standard's application of the Group Policy's provision for Other Limited Conditions to close Zall's claim, and Zall received a full and fair review on administrative appeal.  The district court's judgment for Standard should be affirmed.

## ARGUMENT

### I.  Standard's Claim Determination was Reasonable and Not Arbitrary or Capricious.

#### A.  Standard of appellate review.

The Seventh Circuit reviews *de novo* the district court's grant of summary judgment in ERISA cases.  *Ten Pas v. Lincoln Nat'l Life Ins. Co.*, ___ F.4th ___, 2022 WL 1074533, at *3 (7th Cir. Apr. 11, 2022); *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 671 (7th Cir. 2018).

When the ERISA plan grants discretionary authority to the claims administrator, the court reviews the administrator's determination under the arbitrary and capricious standard.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Ten Pas*, 2022 WL 1074533, at *3.

The Group Policy's Allocation of Authority grants broad discretionary powers to Standard, warranting deferential judicial review under the arbitrary and capricious standard. (R.13-1, AR000024). Zall concedes that the Group Policy confers Standard with discretion, and courts consistently hold that the same Allocation of Authority grants discretion to Standard. (Pl. Brief, pg. 5). *See Black v. Long Term Disability Ins.*, 582 F.3d 738, 744 (7th Cir. 2009) (The Allocation of Authority "clearly gives notice that Standard has the discretion required to trigger the arbitrary and capricious standard of review.").

The arbitrary and capricious standard of review "embod[ies] the highest level of deference." *Exbom v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund*, 900 F.2d 1138, 1142 (7th Cir. 1990). Under this deferential standard, "the reviewing court must ensure only that a plan administrator's decision has rational support in the record." *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 362 (7th Cir. 2017). Courts "may overturn a benefit administrator's decision only if the decision is 'downright unreasonable.'" *Black*, 582 F.3d at 745.

Zall incorrectly asserts that Standard's discretionary determination warrants "special skepticism" due to the structural conflict of interest whereby Standard is both the insurer and claims administrator. (Pl. Brief, pg. 6). The Seventh Circuit has consistently "rejected" the notion that a structural conflict of interest requires a "heightened standard" of judicial review. *Majeski v. Metro. Life Ins. Co.*, 590 F.3d 478, 482 (7th Cir. 2009). "[T]he standard of review remains the same, but the conflict of interest is weighed as a factor in determining whether there is an abuse of discretion." *Dragus*, 882 F.3d at 673 (quotation marks omitted). *See Geiger*, 845 F.3d at 365 (Structural conflicts, "which is a given in almost all

ERISA cases," are "but one factor among many that a reviewing judge must take into account.") (quotation marks omitted).

In addition, approval of a claim and payment of benefits for a period of time does not entitle a claimant to continued payment of benefits indefinitely. An administrator is "entitled to seek and consider new information and, in appropriate cases, to change its mind." *Id.* at 363 (quotation marks omitted). *See also Leger v. Trib. Co. Long Term Dis. Ben. Plan*, 557 F.3d 823, 832 (7th Cir. 2009) (Previous payment of benefits "does not create a presumptive burden for the plan to overcome."). Here, Standard requested additional medical information from Zall. When that evidence showed that Zall was not entitled to further disability benefits, Standard properly exercised its discretionary authority to close his claim.

## B. Zall's burden of proof for Other Limited Conditions.

ERISA and the terms of the Group Policy place the burden on Zall to establish that he satisfies the Group Policy's terms for payment of benefits. Specifically, Zall must provide written proof that he satisfies the exception to Other Limited Conditions for herniated disc or radiculopathy and that because of those conditions alone, he is unable to perform his Own Occupation. (R.13-1, AR000011, 21-22). *See Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005) (Claimant "bears the burden of proving his entitlement to contract benefits."); *Williams v. Standard Ins. Co.*, No. 1:15-cv-00416-DAD-EPG, 2017 WL 1398819, at *14 (E.D. Cal. Apr. 19, 2017) ("[P]laintiff bears the burden of establishing the applicability of this exception recognized in the policy."); *accord Zaccone v. Standard Life Ins. Co.*, 36 F. Supp. 3d 781, 783 (N.D. Ill. 2014). *See also Do v. Metro. Life Ins. Co.*, No. 16-cv-05097-CW, 2018

WL 2021685, at *6 (N.D. Cal. May 1, 2018) (claimant's burden to prove radiculopathy exception to limitation for "disease or disorder of the spine").

Zall endeavors to evade deferential judicial review and shift his burden to Standard to refute his claim. He contends Standard must demonstrate that "but for the Limited Condition, Zall could return to work." He asserts that "Standard unreasonably concluded Zall was disabled by a Limited Condition, to the exclusion of radiculopathy and disc herniation," when "such conditions (and disabilities resulting therefrom) can, and often do, co-exist." (Pl. Brief, pg. 14).

Zall bears the burden to establish he qualifies for benefits. Standard does not bear the burden to *disprove* his claim and establish his ability to work. In addition, the Group Policy's 24-month maximum benefit period applies to any Disability "caused or contributed to by" Other Limited Conditions, and specifies that no benefits are payable after the 24-month period "unless on that date you continue to be Disabled as a result of a Physical Disease, Injury, or Pregnancy for which payment of LTD Benefits is not limited." (R.13-1, AR000021).

Under these provisions of the Group Policy, Zall must establish that he is Disabled by a non-limited condition independent from any Limited Conditions. Benefits are not payable after the 24-month period when a Limited Condition is a contributing factor to Disability. Zall's admission that his Limited Conditions "concurrently" contribute to his Disability, defeats his claim for benefits. (Pl. Brief, pg. 15). *See Dutkewych v. Standard Ins. Co.*, 781 F.3d 623, 636 (1st Cir. 2015) (holding the same Group Policy provisions mean "that a claimant can receive benefits after the limited pay period only if he continues to be disabled due to a physical disease separate from any limited condition"); *Caldwell v. Standard Ins. Co.*, No.

2:14-cv-25242, 2015 WL 5031485, at *8 (S.D. W.Va. Aug. 25, 2015) (holding that under the same Group Policy provisions a claimant "only qualified as disabled if she suffered from a non-limited condition that had the effect of preventing her from" working).

### C. Standard reasonably determined Zall failed to satisfy any exception to Other Limited Conditions.

Under the arbitrary and capricious standard, Zall bears the burden "to demonstrate that there was no rational support in the record" for Standard's determination to close his claim under the Group Policy's provision for Disabilities Subject to Limited Pay Periods. *Frye v. Thompson Steel Co., Inc.*, 657 F.3d 488, 495 (7th Cir. 2011) (quotation marks omitted). This standard "creates a high hurdle" for a claimant. *Ten Pas*, 2022 WL 1074533, at *4.

Yet Zall's Brief offers nothing but perfunctory argument and unsupported conclusory assertions. He professes, without any record citation, that "even absent the Limited Conditions, he remains unable to safely practice dentistry." (Pl. Brief, pg. 15). His "contentions unsupported by the record are forfeited." *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 508 (7th Cir. 2020). *See Draper v. Martin*, 664 F.3d 1110, 1113 n.5 (7th Cir. 2011) (Appellate court "will not hunt through the record looking for corroborating evidence.") (quotation marks omitted); Fed. R. App. P. 28(a)(8)(A).

In addition to lacking record support for his assertions, Zall's Brief also fails to address or even acknowledge the substantial evidence supporting Standard's determination. He thus offers no basis from which to conclude that he satisfied his burden to establish that Standard's determination was arbitrary or capricious. Zall, therefore, forfeits his perfunctory argument that Standard's determination on the medical merits was arbitrary or capricious. *See Shipley v. Chicago Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are undeveloped, cursory, and lack supporting authority are

20

waived."); *U.S. v. Sheth*, 924 F.3d 425, 435 (7th Cir. 2019) ("A party forfeits an argument by failing to raise it below, or by raising it in a perfunctory or general manner.").  Nor can he attempt to develop arguments for the first time in his reply brief.  *Campos v. Cook Cnty.*, 932 F.3d 972, 976 n.2 (7th Cir. 2019).

Standard reasonably determined Zall failed to establish he was Disabled by either a herniated disc or radiculopathy at the time Standard closed his claim in December 2019. Substantial evidence supports Standard's determination, including objective tests, clinical examination findings, and the opinions of four board certified physicians consulted by Standard.

### 1. Zall failed to establish he was Disabled by a herniated disc in December 2019.

To satisfy the Group Policy's exception for herniated discs, Zall was required to prove that as of December 31, 2019, when his claim closed, he had a herniated disc with neurological abnormalities (i) documented by an EMG *and* (ii) documented by either MRI or CT.  (R.13-1, AR000021).  If he cleared that hurdle, he was required to prove that his herniated disc prevented him from performing his Own Occupation as of December 2019. (R.13-1, AR000011, 21-22).  Zall failed to clear either hurdle.

Zall lacks evidence of a herniated disc with neurological abnormalities.  He had no MRI or CT scan that documented a herniated disc contemporaneous with Standard's closure of his claim in December 2019.  In fact, he had no CT scan at any time.  His most recent cervical MRI, five years earlier in November 2014, failed to document a herniated disc at any level of the spine.  Instead, the MRI identified "multilevel degenerative disc disease," which is an Other Limited Condition under the Group Policy, specifically a disease or disorder of the cervical spine.  (R.13-1, AR000021, 64; R.13-5, AR001243; R.13-6,

AR001283-1284, 1296-1297). Consistent with the most recent MRI, consulting physicians Dr. Boodin and Dr. Alpert concluded there was no evidence Zall had any herniated discs with neurologic abnormalities at the time Standard closed his claim in December 2019. (R.13-1, AR000064; R.13-5, AR001243-1244).

Zall, in his Brief, and in his June 2020 administrative appeal to Standard, argued he was disabled by "C5-6 and C6-7 disc herniations." (R.13-1, AR000051, 53) (Pl. Brief, pg. 15). He relied on letters from Drs. Robbins and Truong, who based their opinions on purported disc herniations at C5-6 and C6-7. (R.13-1, AR000056-57).

The 2014 MRI, however, failed to document any herniated discs at C5-6 or C6-7 (or any other spinal level), thus refuting Zall's contentions and the opinions from Dr. Robbins and Dr. Truong. There simply were no herniated discs at any spinal level in the 2014 MRI. (R.13-6, AR001283-1284). Moreover, opinions from physicians do not satisfy the Group Policy's explicit requirement that herniated discs be documented by EMG and CT or MRI. (R.13-1, AR000021). *See Zaccone*, 36 F. Supp. 3d at 798 ("The problem for [claimant] is that such opinion evidence does not satisfy the requirements of the exclusion to the Other Limited Conditions provision.").

Zall had an even older cervical MRI from October 2011 that noted a herniated disc at C5-6. (R.13-6, AR001408). But by the time of the 2014 MRI, the C5-6 disc herniation had resolved and no longer existed. (R.13-6, AR001283-1284).

The 2014 MRI did not document any herniated disc at any level of Zall's cervical spine. (R.13-6, AR001283-1284). Zall had no subsequent MRI before his claim closed on December 31, 2019. Zall failed to provide MRI or CT documentation of any herniated discs at the time Standard closed his claim in December 2019, or even at his most recent cervical

MRI five years earlier in November 2014. Zall, therefore, lacks the objective tests required by the Group Policy to prove a herniated disc with neurological abnormalities documented by CT or MRI. *See Zaccone*, 36 F. Supp. 3d at 800 ("Here, the issue is whether the applicant has provided the evidence explicitly and unambiguously required by the Policy, and that is a matter of contract. If the applicant has not submitted such proof, he cannot prevail.") (quotation marks, ellipses and internal citation omitted).

In his Brief, Zall endeavors to blame Standard for his failure to submit proof to support his claim. (Pl. Brief, pgs. 15-16). But Zall, who was represented by counsel, knew of the Group Policy's explicit requirement for objective documentation by EMG and CT or MRI. Standard, in the determination letter closing Zall's claim, notified Zall and his attorney that his claim closed based on the provision for Other Limited Conditions. (R.13-2, AR000498-501). Standard provided a copy of the provision for Disabilities Subject to Limited Pay Periods and advised him that his appeal should include evidence that he satisfied an exception to Other Limited Conditions. (R.13-2, AR000499, 501).

Zall, in his administrative appeal, quoted the provision for Disabilities Subject to Limited Pay Periods, emphasizing in bold type the requirements for objective EMG and CT or MRI documented findings. (R.13-1, AR000052-53). He premised his appeal on his satisfaction of exceptions to Other Limited Conditions for herniated discs and radiculopathy. (R.13-1, AR000051, 53). Yet he failed to submit any EMG, MRI, or CT tests with his administrative appeal. Zall elected to rest his claim solely on opinions from Dr. Robbins and Dr. Truong, and to assert the existence of herniated discs at C5-6 and C6-7 that was objectively refuted by the 2014 MRI. *See Zaccone*, 36 F. Supp. 3d at 799 (Applying the same provision for Other Limited Conditions, holding that "the terms of the Group Plan not only clearly indicated that

23

objective evidence was necessary, but specified the types of tests that were acceptable. Unfortunately, [the claimant] did not provide those tests.").

Zall not only lacked the requisite objective tests documenting the existence of a herniated disc with neurologic abnormalities, but also failed to establish Disability from any purported herniated disc. Importantly, under the Group Policy, a herniated disc must cause *Disability*, and not merely exist as part of a prior medical history many years earlier. *See Houston v. Provident Life & Acc. Ins. Co.*, 390 F.3d 990, 996 (7th Cir. 2004) ("[T]he MRI merely aided the diagnosis of a herniated disc, and the record offers insufficient objective documentation that this medical condition rendered Ms. Houston unable to perform sedentary work.").

Zall must do more than simply assert a vague combination of subjective symptoms. He must establish that he has a herniated disc with neurological abnormalities, and that in December 2019 he was Disabled by that herniated disc independent from his Other Limited Conditions, including his significant cervical degenerative disc disease documented in the 2014 MRI. "[P]roviding medical evidence of a condition exempted from the limited pay period provision does not permit [the claimant] to use the presence of an exempt condition as a way to receive benefits for symptoms caused by a limited condition." *Caldwell*, 2015 WL 5031485, at *8.

Standard consulted Dr. Alpert and Dr. Boodin, both of whom concluded there was no evidence of a herniated disc or functional limitations from a herniated disc. (R.13-1, AR000064; R.13-5, AR001243-1244). Standard's "decision to seek independent expert advice is evidence of a thorough investigation." *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 575 (7th Cir. 2006).

24

Zall, in his Brief, relies on the opinion letters from Dr. Robbins and Dr. Truong.  (Pl. Brief, pg. 15).  But in addition to their flawed assertions of herniated discs, Dr. Robbins and Dr. Truong also based their opinions of "disability" on the combined effect of Zall's reported symptoms from all conditions, including his degenerative disc disease and carpal tunnel syndrome.  (R.13-1, AR000056-57).  Neither Dr. Robbins nor Dr. Truong opined that Zall's symptom complaints were not "caused or contributed to by" his degenerative disc disease and carpal tunnel syndrome, both of which are Other Limited Conditions for which payment of benefits is limited to 24 months.  Their generalized opinions of "disability" fail to address the key question of whether Zall is Disabled solely by a condition that is not subject to the Group Policy's Other Limited Conditions.

Standard reasonably determined that as of December 2019, Zall was not Disabled by a herniated disc.  The objective MRI findings and the opinions of Dr. Alpert and Dr. Boodin provide rational support for Standard's determination.  Because Standard's "decision has rational support in the record, its decision was not arbitrary and capricious."  *Geiger*, 845 F.3d at 364

### 2.  Zall failed to establish he was Disabled by radiculopathy in December 2019.

To satisfy the Group Policy's exception for radiculopathy, Zall was required to prove that as of December 31, 2019, when his claim closed, (i) he had radiculopathy documented by EMG; and (ii) he was Disabled due to radiculopathy independent from any Limited Conditions.  (R.13-1, AR000011, 21-22).  Zall failed to satisfy either requirement.

Zall lacks evidence of active symptomatic radiculopathy in 2019.  His December 2014 EMG, five years earlier, was interpreted by Dr. Truong as showing mild carpal tunnel syndrome and "reinervation changes" that were "consistent with radiculopathy" at the C7

level. (R.13-6, AR001273, 1290). The 2014 EMG did not show any ongoing denervation (nerve dysfunction). The EMG evidenced reinnervation – restoration of nerve function – more than five years before Zall's claim closed in December 2019. (R.13-1, AR000064; R.13-6, AR001273). Dr. Truong also reported that the EMG was "consistent with neuralgia, neuritis, and radiculitis, unspecified," all of which are Other Limited Conditions. (R.13-6, AR001290, 1296-1297).

Zall failed to provide any contemporaneous EMG close in time to Standard's closure of his claim in December 2019. To satisfy the terms of the Group Policy, Zall must provide written proof that he has a current Disability due to EMG-verified radiculopathy, not simply a 5-year-old EMG that was merely consistent with radiculopathy in the past and that evidenced ongoing restoration of nerve function.

The physicians consulted by Standard persuasively articulated that Zall did not have clinical findings diagnostic for radiculopathy or clinical symptoms caused by radiculopathy. (R.13-1, AR000062-64; R.13-5, AR001243-1244; R.13-6, AR001296-1297, 1311-1313). Consulting physician Dr. Alpert delineated that the clinical findings indicative of a C7 radiculopathy are motor loss in the triceps, reduced or absent triceps reflex, and sensory loss in the C7 dermatomal distribution. (R.13-1, AR000064). Zall, however, had none of these findings at his clinical examinations.

After Standard's approval of his claim in 2014, Zall's medical care was practically non-existent. He had no examinations or treatment whatsoever for three years, from March 2016 to February 2019. (A007-8). He had only four total physician visits, with Dr. Robbins, at which the clinical exams documented Zall had no focal neurological deficits, no dermatomal sensory loss, full 5/5 strength in all upper extremity muscle groups, intact

reflexes, no clinical evidence of nerve damage, only intermittent slightly decreased cervical range of motion, and little to no complaints of radicular pain. (R.13-5, AR001252, 1260; R.13-6, AR001280, 1350). Dr. Robbins, in a telephone call with Dr. Alpert, confirmed Zall did not have "any motor deficits or other focal neurologic changes." (R.13-1, AR000062). Dr. Truong's physical examination of Zall in December 2014 also documented full 5/5 strength in his triceps, biceps, shoulders, elbows, wrists, and hands. (R.13-6, AR001289).

Consulting physicians Dr. Alpert, Dr. Boodin, Dr. Carlson and Dr. Hart concluded that Zall's clinical examination findings were inconsistent with radiculopathy. Dr. Alpert and Dr. Boodin acknowledged and considered the 5-year-old 2014 EMG notation of findings consistent with chronic radiculopathy. But both Dr. Alpert and Dr. Boodin opined that Zall did not have functionally limiting radiculopathy at the time his claim closed in December 2019. (R.13-1, AR000064; R.13-5, AR001243-1244).

Dr. Alpert explained the EMG showed only a finding of "chronic C7 radiculopathy with no ongoing denervation" and that his examinations did not reveal the corresponding symptoms of C7 radiculopathy. (R.13-1, AR000064). Zall's 2014 MRI further did not document any cervical nerve root impingement at C7 or any other level, "which would be the usual MRI finding seen in cervical radiculopathy." (R.13-1, AR000064; R.13-6, AR001283-1284). Dr. Alpert concluded that a diagnosis of cervical radiculopathy is not supported as of January 2020. (R.13-1, AR000064).

Dr. Boodin opined that Zall's physical examinations were not consistent with symptoms of a cervical radiculopathy, and concluded that he did not have any functional limitations from radiculopathy, and that degenerative disc disease was his only functionally limiting condition. (R.13-5, AR001243-1244).

27

Dr. Hart opined that Zall's raised arm and neck positioning depicted in photographs from the FCE and described in physical therapy as eliciting and exacerbating his symptoms of pain and numbness, are not consistent with cervical radiculopathy.  (R.13-6, AR001311-1313).  Elevation of the arms does not "produce an increase in symptoms" of radiculopathy.  To the contrary, "elevation of the arms with cervical radiculopathy often produces relief" from symptoms.  (R.13-6, AR001313).

Dr. Carlson concluded that Zall had degenerative changes in his cervical spine with clinical examination findings that are "consistent with cervical radiculitis."  (R.13-6, AR001296-1297).  Radiculitis and radiculopathy are different conditions.  Radiculitis is an inflammation of the nerve, whereas radiculopathy is disease of the nerve root.  (A020) (citing *Marden*, 2012 WL 2020931, at *12 ("radiculopathy and radiculitis are not interchangeable terms") (citing *Dorland's Illustrated Medical Dictionary* 1405 (26th ed. 1988)).  As explained by Dr. Carlson, radiculitis is an Other Limited Condition, specifically "a disease or disorder of the cervical, thoracic, lumbosacral back and surrounding soft tissues and sprain or strain of joint or muscle without focal neurologic deficits."  (R.13-6, AR001297).

It is reasonable for Standard to rely on the opinions of consulting physicians who evaluate the medical evidence, "a procedure accepted by this court."  *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 335 (7th Cir. 2012).  "In such file reviews, doctors are fully able to evaluate medical information, balance the objective data against the subjective opinions of the treating physicians, and render an expert opinion without direct consultation."  *Davis*, 444 F.3d at 577.  *See Mote v. Aetna Life Ins. Co.*, 502 F.3d

601, 608 (7th Cir. 2007) (Administrator's "use of independent experts and medical consultants not only was justified, but consistent with its duty to investigate.").

The opinions from Drs. Alpert, Boodin, Hart, and Carlson provide rational support for Standard's determination that Zall failed to establish he was Disabled by radiculopathy. *See Black*, 582 F.3d at 745-746 ("Ultimately, Standard's consulting physicians presented thorough and reasonable explanations for their determinations, and Standard was permitted to give them credence."); *Caldwell*, 2015 WL 5031485, at *8 (applying the same Group Policy provisions, holding that "merely establishing the existence of an exempt medical condition did not automatically render Caldwell disabled").

Zall contends his physicians, Dr. Robbins and Dr. Truong, diagnosed C7 radiculopathy. (Pl. Brief, pg. 15). But their diagnoses are based at least in part on the false premise that Zall had a herniated disc at C7. Dr. Truong, at the time of his letter in April 2020, had not seen Zall for more than five years, since his one-time visit in December 2014, and appears to have misread, or perhaps not seen the 2014 MRI, incorrectly concluding it showed "C56 C67 disk herniation." (R.13-1, AR000057). Dr. Robbins similarly incorrectly concludes that Zall had "Herniated disc at C6-7 resulting in Rt C7 radiculopathy." (R.13-1, AR000056).

Opinions from Dr. Robbins and Dr. Truong of C7 radiculopathy are not reliable when based on the false assumption that it is caused by a non-existent herniated disc at C6-7. *See Davis*, 444 F.3d at 578 ("[T]hese examples and others in the record show [treating physician] more as an advocate than a doctor rendering objective opinions.").

Nor did Dr. Robbins or Dr. Truong distinguish any functional limitations purportedly caused by radiculopathy from those caused or contributed to by Zall's Other Limited Conditions, including his degenerative disc disease and carpal tunnel syndrome, as

29

required to establish Disability from a condition that is not subject to the Group Policy's 24-month limitation. Instead, they generally opined Zall was "disabled" based on the combination of all of his conditions. (R.13-1, AR000056-57).

ERISA administrators are not required to accord greater weight to the opinions of treating physicians than to the well-reasoned opinions of consulting physicians who analyze the medical evidence. The Supreme Court refused to adopt any rule that would require ERISA administrators to "accord special weight to the opinions of a claimant's physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

It was reasonable for Standard to afford more weight to the detailed opinions from Drs. Alpert, Boodin, Carlson, and Hart, than to the questionable opinions from Drs. Robbins and Truong premised on false assumptions of a non-existent herniated disc. *See Fischer v. Liberty Life Assur. Co. of Boston*, 576 F.3d 369, 377 (7th Cir. 2009) ("[I]t was not an abuse of discretion for Liberty to reject Fischer's evidence in favor of contrary and, at least in Liberty's view, more compelling evidence."); *Mote*, 502 F.3d at 607 ("[T]he Plan did not act improperly when it looked to, and credited, evidence that conflicted with Mote's treating physicians' opinions as part of its deliberative process in evaluating her claim."); *Davis*, 444 F.3d at 578 ("[G]iven the vagaries and contradictions apparent on the face of Davis's claim, it was reasonable for Unum to rely on its doctors' file reviews in denying Davis's claim.").

The evidence need not be unanimous for Standard's claim decision to be reasonable and rationally supported. Zall's belief that he can identify some evidence that may support his claim does not render Standard's determination arbitrary and capricious. "[T]he deferential standard of review requires that we accept the administrator's choice between competing medical opinions so long as it is rationally supported by record evidence."

*Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 889 (7th Cir. 2012) (quotation marks omitted).  *See Davis*, 444 F.3d at 576 ("Questions of judgment are left to the plan administrator") (quotation marks omitted).

Standard reasonably determined Zall failed to establish he was Disabled by radiculopathy at the time his claim closed in December 2019.  Standard's determination is rationally supported by the record, including the objective tests, clinical examination findings, and the opinions of Drs. Alpert, Boodin, Carlson and Hart.

**II.  Zall Fails to Establish any Violation of the Applicable ERISA Regulation.**

The majority of Zall's Brief centers on his assertion that he was denied a "full and fair review" during his administrative appeal.  (Pl. Brief, pgs. 6-12).  He asserts that the 2018 amendments to the ERISA regulation apply to his claim, that was filed in 2013, and mandate that Standard provide him a copy of Dr. Alpert's report for his response before Standard issued its final determination on administrative review.  (Pl. Brief, pgs. 6-11).  He further contends that even if the 2018 amendments do not apply to his 2013 claim, the pre-2018 version of the ERISA regulation required the review and response process for Dr. Alpert's report during his administrative appeal. (Pl. Brief, pgs. 11-12).

As an initial matter, Zall waived any claimed violation of the regulatory requirements by failing to timely pursue it.  Zall's contention also fails substantively.  The "review and response" regulatory requirement is in a 2018 amendment to the ERISA regulation that applies only to claims filed after April 1, 2018, and does not apply to Zall's claim, filed in 2013.  The pre-2018 regulation that applies to Zall's claim does not require administrators to provide medical reports generated during the administrative review to claimants for response before the administrator's final decision.  Zall further waived any argument that

the pre-2018 regulation required "review and response" by failing to raise it in the district court.

### A. Zall waived his claim of a regulatory violation.

The remedy provided for an alleged regulatory violation is immediate judicial review:  if a plan fails to "follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan."  29 C.F.R. §2560.503-1(l) (2002).  "It is at this point in the claims process that the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."  *Dragus*, 882 F.3d at 672 (quotation marks omitted).

Standard advised Zall on several occasions during the administrative review that the medical evidence had been referred for evaluation by a physician who was preparing a report.  (R.13-2, AR000491, 000489).  Zall, however, never requested a copy of the report or advised Standard that he contended he was entitled to review and respond to the report as part of the administrative appeal.  Even after Standard upheld the claim closure on administrative appeal, based in part on Dr. Alpert's report, Zall said nothing about any claimed right to review and rebut Dr. Alpert's report.  Instead, six months later, he filed his Complaint.  Even in the Complaint he failed to allege any purported regulatory violation premised on the failure to provide him with Dr. Alpert's report during the administrative review.  (R.1, Complaint).

The regulation is not designed to permit Zall to sabotage the administrative review process by remaining silent on a purported regulatory violation, pursuing the allegedly deficient administrative proceedings to conclusion, and then utilize the claimed regulatory

violation to prevail in court and demand a second administrative appeal.  Zall continued to

pursue his administrative appeal to conclusion, "effectively waiving" any argument for a

regulatory violation.  *Dragus*, 882 F.3d at 672.  Zall further waived the issue by failing to

allege it in his Complaint.  *See Lloyd v. Procter & Gamble Dis. Benefit Plan, Plan #501*, No. 20-

4329, 2021 WL 4026683, at *11 (6th Cir. Sept. 3, 2021) (Claimant "first asserted these

procedural violations in his motion for judgment on the administrative record" and "did not

include them in his complaint.  Accordingly, these claims were not properly before the

district court."); *Mitchell v. Lucent Tech. Inc. Pension Plan*, No. 17-cv-8097, 2019 WL

1077128, at *5 n.1 (N.D. Ill. Mar. 7, 2019) (Argument that administrator failed to provide a

"full and fair review" by not informing her of a deadline "fails" where it was not raised in

her complaint or before the administrator.  "Presenting it now and asking the Court to enter

judgment against Defendants on this issue is inappropriate").

### B.  The 2018 amendments to the ERISA regulation do not apply to Zall's 2013 claim.

#### 1.  The 2018 amendments apply only to disability claims filed after April 1, 2018.

ERISA empowers the Secretary of the Department of Labor ("DOL") to "prescribe such

regulations as he finds necessary or appropriate to carry out the provisions of this

subchapter," including regulations establishing procedures for the administration of claims

for benefits and administrative appeals.  29 U.S.C. §§1133 and 1135.  "Consistent with

Congress's delegation of authority in [29 U.S.C. §1133] the Department of Labor

promulgated a claims-procedure regulation for ERISA benefit plans."  *Jette v. United of*

*Omaha Life Ins. Co.*, 18 F.4th 18, 26 (1st Cir. 2021).  The regulation was first issued in 1977,

then revised in November 2000, applicable to claims filed on or after January 1, 2002. *Id.* at 25 n.11.

In 2012, the DOL began evaluating substantial amendments to claim procedures that had been in effect since 2002. 81 Fed. Reg. 92,316-317 (Dec. 19, 2016). The proposed amendments were published in the Federal Register on November 18, 2015, as required by the Administrative Procedures Act, to provide public notice and opportunity for comment. 80 Fed. Reg. 72,014 (Nov. 18, 2015). *See* 5 U.S.C. §552(a); 5 U.S.C. §§553(b) and (c).

The amendment relied on by Zall requires that before issuing a final determination on appeal, the administrator must provide to the claimant any new evidence considered or generated during the appeal, and give the claimant an opportunity to respond before the deadline for the administrator's decision. 29 C.F.R. §2560.503-1(h)(4)(i) (2018).

This "review and response" amendment in subsection (h)(4)(i) was modelled on procedures required under the Affordable Care Act ("ACA") regulation, with the ACA serving "as an appropriate model for improvements to the claims process for disability claims." 81 Fed. Reg. 92,316-318, 92,325 (Dec. 19, 2016); 80 Fed. Reg. 72,015, 72,017 (Nov. 18, 2015). No comparable provision was included in the 2002 version of the ERISA regulation, which was promulgated several years before the ACA was passed in 2010. 29 C.F.R. §2560.503-1(h)(4) (2002).

The amendment was vociferously debated during the public comment process, with different revisions proposed and considered. Concerns included that the requirement of a never-ending "cycle of review and re-review" would lead to significant delay in decisions, would increase costs, and would create difficulties in completing the administrative review

process in the short time frame permitted for decision on an administrative appeal.  81 Fed.

Reg. 92,325, 92,316-319 (Dec. 19, 2016); 80 Fed. Reg. 72,018 (Nov. 18, 2015).

On December 19, 2016, the DOL published the current amended ERISA regulation in the

Federal Register as a Final Rule, including subsection (h)(4)(i).  81 Fed. Reg. 92,316 (Dec.

19, 2016).  In accordance with the Administrative Procedures Act, the Effective Date of the

regulation was 30 days after publication, on January 18, 2017.  81 Fed. Reg. 92,316 (Dec. 19,

2016).  *See* 5 U.S.C. §553(d).

The Applicability Date of the regulation, however, was postponed until one year later, to

January 1, 2018:  "*Applicability Date*: This regulation applies to all claims for disability

benefits filed on or after January 1, 2018."  81 Fed. Reg. 92,316 (Dec. 19, 2016).  The DOL

delayed the Applicability Date due to the substantial changes in the regulation "in order to

provide adequate time for disability benefit plans and their affected service providers to

adjust to it, as well as for consumers and others to understand the changes made."  82 Fed.

Reg. 47,410 (Oct. 12, 2017); 82 Fed. Reg. 56,560 (Nov. 29, 2017).

During the adjustment period, the debate continued over the "review and response"

amendment in subsection (h)(4)(i) and others.  As a result, on October 12, 2017, the DOL

proposed to further extend the Applicability Date of the amendments by 90 days to April 1,

2018:  "If this proposal is finalized, the amendments made on December 19, 2016, would

become applicable to claims for disability benefits that are filed after April 1, 2018, rather

than January 1, 2018."  82 Fed. Reg. 47,409-410 (Oct. 12, 2017).

The 90-day delay in the Applicability Date facilitated further public comment and

potential revision of the amendments, including the "review and response" amendment in

(h)(4)(i).  82 Fed. Reg. 56,561-562 (Nov. 29, 2017).  The DOL determined that "In light of

the fact that the Final Rule is not yet applicable," the 90-day delay approach is appropriate because it "allows stakeholders interested in changes to the Final Rule a final opportunity to make their case" and "avoids potential unnecessary disruption of the disability insurance market." 82 Fed. Reg. 56,562 (Nov. 29, 2017).

On November 29, 2017, the 90-day extension was adopted, delaying the Applicability Date of the new amendments to claims for disability benefits filed on or after April 1, 2018. 82 Fed. Reg. 56,560 (Nov. 29, 2017).

### 2.  Zall's 2013 claim is not subject to the 2018 amendments.

A disability claim is "filed" on the date the claimant makes an initial request for payment of benefits.  The ERISA regulation defines a "claim for benefits" as "a request for a plan benefit or benefits made by a claimant in accordance with the plan's reasonable claim procedure for filing benefit claims."  29 C.F.R. §2560.503-1(e).  *See Smith v. Hartford Life & Acc. Ins. Co.*, 421 F. Supp. 3d 416, 419 (E.D. Ky. 2019) (explaining "filing" of a claim for purposes of ERISA's 2018 regulation only applies to new claims for benefits, not interactions "after a party files an initial claim") (citing *Moore v. Metro. Life Ins. Co.*, No. 18-5325, 2019 WL 1499337, at *4 (6th Cir. Jan. 3, 2019)).

Zall filed his disability claim with Standard in November 2013.  (R.13-7, AR001832). The 2018 amendments to the ERISA regulation apply only to claims for disability benefits filed after April 1, 2018, as specified in the regulation's Applicability Date, and repeatedly confirmed by the DOL in the Federal Register.  Accordingly, the 2018 amendments, including the "review and response" amendment in subsection (h)(4)(i), do not apply to Zall's claim.  *See Mayer v. Ringler Assoc. Inc.*, 9 F.4th 78, 86-87 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1120 (2022) (holding the 2018 amendments to the ERISA regulation do not apply

to claims filed before 2018); *Martin v. Guardian Life Ins. Co. of Am.*, No. 5:20-507-DCR, 2021 WL 2516083, at *2 (E.D. Ky. June 15, 2021) (holding a disability claim filed before April 1, 2018 is subject to the regulations "applicable to claims filed after January 1, 2002, but before April 1, 2018"). *Cf. Fessenden v. Reliance Standard Life Ins. Co.*, 927 F.3d 998, 1002 n.2 (7th Cir. 2019) (referring to the 2002 ERISA regulation and noting "The regulation was amended in 2000, but the amendments apply only to claims filed on or after January 1, 2002") (citing 65 Fed. Reg. 70,265, 70,271 (Nov. 21, 2000)).

Zall, in his Brief, incorrectly contends that the First Circuit in *Jette* held that the 2018 amendment in (h)(4)(i) applies to claims filed before April 1, 2018. (Pl. Brief, pg. 9-10). To the contrary, *Jette* discussed the pre-2018 version of the regulation because the "parties agree that because Jette's claim was filed in 2013, it is governed by the 2002 Regulation." *Jette*, 18 F.4th at 25 n.11. *Jette* does not hold that (h)(4)(i) applies to pre-2018 claims.

Zall further points to subsection (p) of the 2018 regulation for his position that the 2018 amendments apply to his 2013 claim. He contends that subsection (p) makes the 2018 amendments immediately applicable to claims filed since 2002, with the exception of a carved out period in (p)(4) for claims filed between January 17, 2017 and April 1, 2018, unless the subsections are expressly referred to in subsection (p)(3). (Pl. Brief, pgs. 10-11).

Zall misconstrues subsection (p). Subsection (p) provides for continuity of the 2002 regulation with a transitional adjustment period with minimal changes to the regulation from the Effective Date of January 18, 2017 to the Applicability Date of the new amendments on April 1, 2018, as provided by subsection (p)(4). After April 1, 2018, the new amendments are applicable to new claims as specified in (p)(3) and the Federal Register. 29 C.F.R. §2560.503-1(p) (2018); 82 Fed. Reg. 56,560 (Nov. 29, 2017).

The DOL delayed the Applicability Date of the 2018 amendments to create a transitional period that allowed time for ongoing debate over further revisions to the proposed amendments and time for plan administrators to adjust to the new amendments by developing new claims procedures to comply with the substantial changes.  82 Fed. Reg. 47,409-410 (Oct. 12, 2017); 82 Fed. Reg. 56,560, 56,562 (Nov. 29, 2017).

Subsection (p)(4), which applied during this 15-month adjustment period in lieu of the 2018 amendments, ensured minimal change to the pre-2018 regulation for claims filed during the transition period.  Subsection (p)(4)(ii) includes identical language to the pre-2018 version of (h)(4) establishing the requirements for an administrative review, thus ensuring continuity during the transition period with no changes to the version of (h)(4) in effect since 2002.  *Compare* 29 C.F.R. §2560.503-1(p)(4)(ii) (2018) *with* 29 C.F.R. §2560.503-1(h)(4) (2002).  Subsection (p)(4)(i) is parallel to the pre-2018 amendment version of (g)(v), regarding notice requirements in the initial adverse benefit determination, with minimal changes, not relevant to this appeal.  *Compare* 29 C.F.R. §2560.503-1(p)(4)(i) (2018) *with* 29 C.F.R. §2560.503-1(g)(v) (2002).

In short, subsection (p)(4) provides that for claims filed during the transition period from January 18, 2017 to April 1, 2018, the pre-amended version of (h)(4) applies to administrative review procedures, along with minimal changes to the pre-amended version of (g)(v) on notification.  The regulatory requirements otherwise remained the same for all claims filed from the 2002 regulation until the Applicability Date of April 1, 2018, when the new 2018 amendments began to apply to new claims filed after that date.

Zall's misreading of subsection (p) contradicts the rulemaking process documented in the Federal Register, illogically transforms the transition period into a carve out period, and manufactures illogical and impermissible retroactive effect to the 2018 amendments.

The 2018 amendments were not final until the Applicability Date of April 1, 2018. Before that date, the 2018 amendments continued to be subject to public comment and further revision.  82 Fed. Reg. 56,561-562 (Nov. 29, 2017).  The DOL continued to consider whether "to allow all or part of the Final Rule to take effect as written, propose a further extension, withdraw the Final Rule, or propose amendments to the Final Rule."  82 Fed. Reg. 47,412 (Oct. 12, 2017).  Contrary to Zall's insistence, the 2018 amendments were not in effect while still undergoing public comment and potential withdrawal or revision.  Indeed, the DOL, in further extending the Applicability Date, confirmed that "the Final Rule is not yet applicable."  82 Fed. Reg. 56,562 (Nov. 29, 2017).

Zall's misinterpretation of subsection (p) further manufactures a nonsensical scenario whereby the 2018 amendments apply immediately to all claims after 2002, with the exception of a carve out period from January 18, 2017 to April 1, 2018.  But if the 2018 amendments were immediately applicable to all claims for the past 15 years, since 2002, there would be no reason to carve out a 15-month period for adjustment to the new amendments and to avoid "disruption of the disability insurance market."  82 Fed. Reg. 56,562 (Nov. 29, 2017).  A carve out period serves no logical purpose and thwarts the transition period that was carefully constructed based on public comments during the rulemaking process.

Subsection (p)(4) provides that (h)(4) does not apply during the transitional period because the pre-2018 subsection (h)(4) was replaced by (p)(4)(ii) to maintain continuity

with the 2002 regulation during the adjustment period, not because the DOL was creating a carve out period to the retroactive applicability of the amendments in (h)(4)(i) and (h)(4)(ii).  The 2018 amendments did not change the landscape for currently pending claims filed between 2002 and April 2018, such as Zall's claim.

Zall's misconstruction of subsection (p)(4) improperly attributes retroactive effect to the regulation.  But an administrative agency cannot create retroactive rules unless Congress expressly conveys that power, which Congress did not do in granting the DOL authority to promulgate regulations for ERISA.  29 U.S.C. §§1133 and 1135.  Nor did the DOL create a retroactive rule.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.").

The 2018 amendments to the ERISA regulation, including subsection (h)(4)(i), apply only to claims filed after April 1, 2018, and do not apply to Zall's disability claim, filed in 2013.  Zall's 2013 claim is governed by the regulations in effect for claims filed after January 1, 2002 and before April 1, 2018.

### C. Zall fails to establish any violation of the pre-2018 ERISA regulation.

#### 1. Zall waived any claimed violation of the pre-2018 regulation by failing to raise it in the district court.

Zall, in his briefs before the district court, argued only that the 2018 amended regulation applied to the administrative appeal of his claim.  Zall never argued in the district court that the pre-2018 regulation required that he be provided a copy of Dr. Alpert's report during his administrative appeal.  (R.15, Pl. Mem., pgs. 7-9 of 16).  The district specifically found that "Zall does not argue that he was denied a full and fair review

under the version of 29 C.F.R. §2560.503(h)(4) that was in effect at the time he filed his

claim." (A014).

Zall thus waived any argument on appeal that Standard violated the pre-2018

regulation or that the pre-2018 regulation required that he be provided Dr. Alpert's report.

*See Ten Pas*, 2022 WL 1074533, at *3 n.2 (claimant waived arguments regarding violations

of the ERISA regulation "because he failed to raise them in the district court"); *Dorris v.*

*Unum Life Ins. Co. of Am.*, 949 F.3d 297, 306 (7th Cir. 2020) ("Even arguments that a party

presented to the district court can be waived, if they were underdeveloped, conclusory, or

unsupported by law.") (quotation omitted).

### 2. The pre-2018 regulation does not require "review and response" during the administrative appeal.

Multiple Circuit Courts have held that the pre-2018 regulation that applies to Zall's

claim, does not require "the claims administrator to provide the claimant with documents

developed or considered during the administrative appeal in advance of the final

determination." *Mayer*, 9 F.4th at 87 (citing *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*,

644 F.3d 427, 436-437 (D.C. Cir. 2011); *Midgett v. Wash. Grp. Int'l. Long Term Dis. Plan*, 561

F.3d 887, 895-896 (8th Cir. 2009); *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241,

1245-1246 (11th Cir.), *cert. denied*, 555 U.S. 1048 (2008); *Metzger v. Unum Life Ins. Co. of*

*Am.*, 476 F.3d 1161, 1166-1167 (10th Cir. 2007)).

"Circuits that have addressed the issue [under the pre-2018 regulation] have generally

determined that ERISA does not guarantee claimants an opportunity to rebut an

independent medical examination report generated during an appeal prior to a denial of

benefits." *Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 310 (5th Cir. 2015). *See also*

*Morningred v. Delta Family-Care & Survivorship Plan*, 526 F. App'x 217, 221 n.9 (3rd Cir.

2013) ("ERISA does not require that administrators provide claimants access to medical opinion reports prior to making final decisions on appeal"); *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010) (contention that claimant is entitled to receive a medical report during the administrative appeal is "dubious in light of the holdings of two of our sister circuits").

The Seventh Circuit too has acknowledged that the pre-2018 regulation does not require review and response during the administrative appeal, finding that an administrator "afforded [claimant] more claim review process than the Department of Labor requires" under the pre-2018 regulation by providing the claimant with the independent medical opinions and "allowing him to rebut the opinions" before making its final decision. *Dragus*, 882 F.3d at 673.

Zall argues that the DOL's preamble to the 2018 amendments suggests that even under the pre-2018 regulations, administrators were required to provide reports generated during the appeal to the claimant before making a final determination on appeal. (Pl. Brief, pgs. 11-12). The preamble states, "It was and continues to be the view of the Department that claimants are deprived of a full and fair review, as required by section 503 of ERISA, when they are prevented from responding, at the administrative law stage level, to all evidence and rationales." 81 Fed. Reg. 92,324-325 (Dec. 19, 2016). Zall contends that the 2018 amendments simply make the requirement "more explicit," as always interpreted by the DOL, including in an amicus curiae brief to the Eighth Circuit in *Midgett*, 561 F.3d 887. (Pl. Brief, pg. 12).[4]

---

[4] Zall cites the district court's decision in *Hughes v. Hartford Life & Acc. Ins. Co.*, 368 F. Supp. 3d 386, 403 (D. Conn. 2019). *Hughes* is no longer viable after the Second Circuit decision in *Mayer*, 9 F.4th at 86. (A014).

But the DOL, in proposing the 2018 amendments, referred to the "review and response" process on administrative appeal as a "new right": "These *new rights* (*i.e.*, review and response rights) are being proposed as an overlay to the detailed timing rules already in the Section 503 Regulation." The DOL solicited comments "on whether, and to what extent, modifications to the existing timing rules are needed to ensure that disability benefit claimants and plans will have ample time to engage in the back-and-forth dialog that is contemplated by the *new review and response rights*." 80 Fed. Reg. 72,018 (Nov. 18, 2015) (emphasis added). "Indeed, when amending the regulation, the Department of Labor explained that it was providing 'additional protections,' including 'the right of claimants to respond to new and additional evidence,' in order to make 'improvements to the claims process for disability claims.'" *Mayer*, 9 F.4th at 88 n.5 (quoting 81 Fed. Reg. 92,316-317 (Dec. 19, 2016)). This "additional protection" for a "new right" for "review and response" was not part of the pre-2018 regulation.

The DOL modelled the "review and response" requirement after the regulatory requirements for the Affordable Care Act, which was not passed until 2010, well after the 2002 regulations were established, further undermining that the requirement already existed in the pre-2018 regulation. 81 Fed. Reg. 92,316-318, 92,325 (Dec. 19, 2016); 80 Fed. Reg. 72,015, 72,017 (Nov. 18, 2015). Additionally, the Applicability Date for the 2018 amendments was delayed to determine whether to keep the "review and response" amendment in the final rule and to allow plan administrators "to adjust to it, as well as for consumers and others to understand the changes made." 82 Fed. Reg. 56,560 (Nov. 29, 2017); 82 Fed. Reg. 47,413 (Oct. 12, 2017). The delay in the Applicability Date and the DOL's consideration of extending the time deadlines for administration decision would not

be necessary if the pre-2018 regulation already required "review and response" during the administrative appeal.

Moreover, the position Zall advocates contradicts the rationale the DOL offered when it proposed the pre-2018 version of the regulation in 1998. In 1998, the DOL explained that the requirement to provide documents was to ensure that claimants had sufficient information to evaluate whether to pursue an appeal. After receipt of an adverse benefit determination, claimants are entitled to relevant documents to "satisfy the claimant's need to understand the evidentiary basis for the decision and therefore to determine whether an appeal is justified and how such an appeal might best be pursued." 63 Fed. Reg. 48,395 (Sept. 9, 1998).

After conclusion of the administrative appeal, "The proposal further provides claimants *whose appeals on review are denied* with access, upon request, to relevant documents, records, and information," particularly "any documents that were created or received during the review process, including specifically, the reports and identities of any experts consulted by the plan during the review." Providing this disclosure after conclusion of the administrative appeal allows claimants to "be better equipped to determine whether to pursue their claims further by filing a civil action under section 502(a) of the Act." 63 Fed. Reg. 48,395 (Sept. 9, 1998) (emphasis added).

The Eighth and Tenth Circuits, considering the language of the pre-2018 regulation as well as the DOL's explanations in enacting the regulation, explained that the pre-2018 regulation requires disclosure at two discrete stages of the administrative process. First, after the initial adverse benefits determination in order for the claimant to determine whether to pursue an administrative appeal. Second, after the final decision on

44

administrative review so that the claimant can evaluate whether to seek judicial review. *Midgett*, 561 F.3d at 894-895; *Metzger*, 476 F.3d at 1167.  *See also Glazer*, 524 F.3d at 1245 (administrator "was not required to produce the documents it relied upon while it reviewed the initial denial of benefits; the production occurs after a final decision is reached").

As explained by the Tenth Circuit, "The Department of Labor's own description of the 2000 amendments cuts against" the argument that under the pre-2018 regulation, claimants must "be given pre-decision access to relevant documents generated during the administrative appeal." *Metzger*, 476 F.3d at 1167.  The Eighth Circuit was not persuaded by the DOL's change of position in its amicus curiae brief, holding that a "determination that claimants are entitled to pre-decision access to relevant documents generated during the administrative appeal—would nullify the Department's explanation" for the pre-2018 regulation.  *Midgett*, 561 F.3d at 896 (quotation marks omitted).  *See also Mayer*, 9 F.4th at 87 ("The Tenth and Eleventh Circuits have also agreed with the Department of Labor that the purpose of the production of these documents is to enable a claimant to evaluate whether to appeal an adverse determination.") (quotation marks omitted).

Moreover, "If the prior regulation had already required all plans to disclose documents developed or relied on before a final determination on appeal, then it would not have been necessary to amend §2560.503-1(h)(4) to expressly include an obligation for plans providing disability benefits to disclose documents developed or relied on during the appeal before a final determination."  *Mayer*, 9 F.4th at 88 n.5.  "That the Department adopted these changes indicates that the prior version of §2560.503-1(h)(4) … did not already include those procedural requirements."  *Id*.

There is no requirement in the pre-2018 regulation that documents generated during the administrative appeal be provided to the claimant for review and response before the administrator's final decision. *Midgett*, 561 F.3d at 894-895; *Glazer*, 524 F.3d at 1245; *Metzger*, 476 F.3d at 1167. Rather, the claimant is "entitled to access those peer reviews only after [the administrator] made its 'adverse benefit determination on review.'" *Midgett*, 561 F.3d at 895 (quoting 29 C.F.R. §2560.503-1(i)(5) (2002)). *See also Glazer*, 524 F.3d at 1245 (After administrator "reached its final decision, all relevant documents generated during the review and initial claim determination had to be produced to the claimant" under subsection (i)(5), and this "requirement would be superfluous if the claimant had a right to the documents during the pendency of the review.").

Zall's Brief relies heavily on the First Circuit's decision in *Jette* (although he mischaracterizes its holding). (Pl. Brief, pgs. 9-12). In *Jette*, the claimant in her request for administrative review, requested that the administrator provide any new medical opinions generated on appeal for her response before the administrator made its final determination. The administrator refused. *Jette*, 18 F.4th at 24. The First Circuit held that "upon Jette's request for documents," the administrator was required to disclose before its final decision, a report from an independent medical evaluation (IME) generated during the administrative review, pursuant to subsection (h)(2)(iii) of the pre-2018 ERISA regulation. *Id*. at 29. Subsection (h)(2)(iii) states that a plan's claims procedures for an appeal of an adverse benefit determination must provide "that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. §2560.503-1(h)(2)(iii) (2002).

The First Circuit's interpretation of (h)(2)(iii) is contrary to every other Circuit decision and belied by the DOL's expressed purpose for this subsection, which is that after a claim is denied, claimants are provided access to the basis for the decision in order "to determine whether to pursue further appeal." 65 Fed. Reg. 70,252 (Nov. 21, 2000); 63 Fed. Reg. 48,395 (Sept. 9, 1998). Subsection (h)(2)(iii) does not require that documents generated *during* the appeal be provided before the administrator's final decision. *Mayer*, 9 F.4th at 87-88; *Midgett*, 561 F.3d at 894-895; *Glazer*, 524 F.3d at 1245; *Metzger*, 476 F.3d at 1167.

As articulated by the Tenth Circuit, "In light of the sum procedural requirements of 29 C.F.R. §2560.503-1 and the Department's explanation of those regulations, we hold that subsection (h)(2)(iii) does not require a plan administrator to provide a claimant with access to the medical opinion reports of appeal-level reviewers prior to a final decision on appeal." *Metzger*, 476 F.3d at 1167. As noted by the Eighth Circuit, although the pre-2018 regulation specifically requires the administrator on administrative appeal to "consult with a health care professional" in subsection (h)(3)(iii), "Conspicuously absent from [subsection (h)(3)(iii)] is any requirement that the claimant be given the opportunity to review and rebut the health care professional's conclusion." *Midgett*, 561 F.3d at 895 (citing 29 C.F.R. §2560.503-1(h)(3)(iii) (2002)). *See also Glazer*, 524 F.3d at 1245 (argument that subsection (h)(2)(iii) requires disclosure during the administrative appeal "is contrary to the plain text of the regulations").

Prior to *Jette*, the Circuit Courts had "uniformly concluded" that the pre-2018 version of the regulation does not require "the claims administrator to provide the claimant with documents developed or considered during the administrative appeal in advance of the final determination." *Mayer*, 9 F.4th at 87. *Jette* is contrary to the substantial authority from

its sister circuits, including the Second, Third, Fifth, Eighth, Tenth and Eleventh Circuits.

*Mayer*, 9 F.4th at 87; *Killen*, 776 F.3d at 310; *Morningred*, 526 F. App'x at 221 n.9; *Midgett*,

561 F.3d at 894-896; *Glazer*, 524 F.3d at 1245-1246; *Metzger*, 476 F.3d at 1166-1167.

    *Jette* further conflicts with the Seventh Circuit's recognition that providing claimants

medical opinions for rebuttal during the administrative appeal before the final decision

provides "more claim review process than the Department of Labor requires" in the pre-

2018 regulation.  *Dragus*, 882 F.3d at 673.  District courts in this Circuit also hold that

"review and response" during the administrative appeal is not required under the pre-2018

regulation.  *See, e.g., Univ. of Wis. Hosp. & Clinics, Inc. v. Air Prods. & Chems., Inc.*, No. 14-cv-

803-wmc, 2018 WL 2025658, at *6 (W.D. Wis. May 1, 2018); *Gebert v. Thrivent Fin. for Luth.

Grp. Dis. Income Ins. Plan*, No. 13-C-170, 2013 WL 6858531, at *3-4 (E.D. Wis. Dec. 30,

2013); *Feggins v. Reliance Standard Life Ins. Co.*, No. 11-cv-073-wmc, 2013 WL 4782726, at

*4 (W.D. Wis. Sept. 6, 2013); *Windbiel v. Grp. Short Term Dis.*, No. 09-C-139, 2010 WL

2720000, at *3 (E.D. Wis. July 7, 2010).

    Moreover, an important distinction exists between *Jette* and Zall's case.  The claimant in

*Jette*, unlike Zall, made a specific request for the IME report generated during the

administrative review.  *Jette*, 18 F.4th at 24.  Subsection (h)(2)(iii) is triggered only "upon

request."  29 C.F.R. §2560.503-1(h)(2)(iii) (2002).  Zall, although aware a medical report

was prepared during the administrative review, did not make any request to Standard for

the report during the administrative review, despite being represented by counsel.  (R.13-2,

AR000491, 489).  Zall's case is thus not analogous to *Jette*.  *See Jette*, 18 F.4th, at 28 n.13, 30

n.14 (identifying Jette's specific request for the report during the administrative appeal as a

distinguishing factor with other cases); *Balmert*, 601 F.3d at 503 (holding that where

claimant knew administrator would be relying on a medical report during the administrative appeal, her failure to request the report and therefore "not fully exercise her purported rights to receive and rebut [doctor's] medical opinion does not render her administrative appeal procedurally defective").

The pre-2018 ERISA regulation did not obligate Standard to submit Dr. Alpert's report to Zall for review and response prior to deciding his administrative appeal. A "full and fair review" under the pre-2018 ERISA regulation does not require the administrator "to produce documents developed or considered while [the claimant's] claim was under review prior to a final determination." *Mayer*, 9 F.4th at 88. Zall received a full and fair review. *See Midgett*, 561 F.3d at 896 (Claimant "was not denied a full and fair review of her claim by Aetna's failure to provide her the opportunity to review and rebut the peer reviews of [consulting physicians] prior to denying her second-level appeal.").

## CONCLUSION

Standard complied with the applicable ERISA regulation, and substantial evidence supports Standard's determination that Zall failed to qualify for payment of additional benefits. The district court correctly held that Standard's determination was reasonable and not arbitrary or capricious. The district court's entry of judgment for Standard should be affirmed.

Respectfully Submitted,

*/s/ Jacqueline J. Herring*
Attorney for Defendant-Appellee
Standard Insurance Company
SMITH | VON SCHLEICHER + ASSOCIATES
180 North LaSalle St. Suite 3130
Chicago, Illinois 60601
P  312.541.0300 | F  312.541.0933

CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for

Defendant-Appellee Standard Insurance Company certifies that the foregoing brief:

(i) Complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i), Fed. R.

App. P. 32(e), and Cir. R. 32(c) because it contains 13,981 words including footnotes and

excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

(ii) Complies with the typeface requirements of Fed. R. App. P. 32(a)(5), Fed. R. App. P.

32(e), and Cir. R. 32(b) and the type styles requirements of Fed. R. App. P. 32(a)(6), Fed. R.

App. P. 32(e), and Cir. R. 32(b) because the brief has been prepared in a proportionally

spaced typeface using Microsoft Office Word 2019 in 12-point Minion Pro with footnotes in

11-point Minion Pro.

By: */s/ Jacqueline J. Herring*
     Attorney for Defendant-Appellee
     Standard Insurance Company

CERTIFICATE OF SERVICE

I certify that on April 21, 2022, I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF

system.  I certify that all participants in the appeal are registered CM/ECF users and that

service will be accomplished by the CM/ECF system.

By:  */s/ Jacqueline J. Herring*
    Attorney for Defendant-Appellee
    Standard Insurance Company