Case No: 22-1096

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

ERIC S. ZALL,

        Plaintiff-Appellant,

   vs.

STANDARD INSURANCE COMPANY,

        Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Wisconsin
Case No: 20-cv-19-slc
The Honorable Magistrate Judge Stephen L. Crocker

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT, ERIC S. ZALL

---

William E. Parsons
Email: wparsons@hq-law.com
Jessa L. Victor, State Bar No. 1099144
Email: jvictor@hq-law.com
HAWKS QUINDEL, S.C.
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

Attorneys for Plaintiff-Appellant, Eric S. Zall

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .................................................................................................. 1

ARGUMENT .......................................................................................................... 3

    A.  Standard Violated ERISA Claims Procedures. ........................................... 3

        1.   ERISA section 503's plain language confirms that the amended 2018 ERISA claims procedures apply to Zall's claim. ................................................................. 3

        2.   The Secretary's interpretation of its own regulations supports that subsection (h)(4)(i) applies to claims filed as of 2002. ................................................... 6

    B.  Zall did not waive his procedural violation argument. ................................ 9

        1.   Exhausting the administrative appeal process did not waive Zall's right to advance his procedural violation argument. ..................................................... 9

        2.   Zall's Complaint states he was denied a full and fair review, thus preserving his procedural violations argument. ..................................................... 12

    C.  Standard's arbitrarily denied Zall's benefits. ............................................ 13

CONCLUSION ..................................................................................................... 15

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. (32)(A)(7) and CIRCUIT RULE 32(c) ................................................................................................. 16

CERTIFICATE OF SERVICE ........................................................................... 17

CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 25(a) ..................... 18

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Donahoe*, 699 F.3d 989 (7th Cir. 2012) .................................................. 12

*Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) ................. 6, 8

*Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852 (7th Cir. 2017) ...... 12, 13

*Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667 (7th Cir. 2018) ........... 10, 11

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989) ....................................... 1

*Johnson v. City of Shelby*, 574 U.S. 10, 135 S. Ct. 346 (2014) ................................... 12

*Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279 (2d Cir. 2000) ................. 13

*McConnell v. Am. Gen. Life Ins. Co.,* 434 F. Supp. 3d 1285 (S.D. Ala. 2020) 3, 4, 5, 14

*Robinson v. Shell Oil Co.,* 519 U.S. 337, 117 S. Ct. 843 (1997) ................................... 5

*Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805 (7th Cir. 2006) ............................... 13

*Whitaker v. Milwaukee Cty.*, 772 F.3d 802 (7th Cir. 2014) ....................................... 12

## Statutes

29 C.F.R. § 2560.503-1(h)(2) ....................................................................................... 12

29 C.F.R. § 2560.503-1(l) ............................................................................................. 10

29 C.F.R. § 2560.503-1(p)(2) ......................................................................................... 4

29 C.F.R. § 2560.503-1(p)(3) ......................................................................................... 4

29 C.F.R. § 2560.503-1(p)(4) ......................................................................................... 4

29 C.F.R. § 2560-503.1(a) .............................................................................................. 1

29 C.F.R. § 2560-503.1(h) .............................................................................................. 1

29 C.F.R. § 2560-503.1(h)(4)(i) ............................................................................. 3, 9, 11

29 C.F.R. § 2560-503.1(p)(1) ................................................................................. 2, 3, 5

29 U.S.C. § 1133(2) ................................................................................ 1

## Other Authorities

Br. of the Sec'y of Lab. as Amicus Curiae, *Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009) .................................................. 2, 7, 8

Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316 (Dec. 19, 2016).............................................................................................. 2, 7

## INTRODUCTION

ERISA was enacted to promote the interests of plan participants and to protect contractually defined benefits. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113-14 (1989). To that end, ERISA section 503 sets forth minimum requirement for employee benefit plan procedures, and requires plans provide claimants the specific reasons for denying a claim and an opportunity for a "full and fair review" of those reasons. 29 U.S.C. § 1133(2); 29 C.F.R. § 2560-503.1(a). A full and fair review necessitates a meaningful dialogue between plan administrators and claimants in which claimants are guaranteed the right to review and respond to relevant evidence. 29 C.F.R. § 2560-503.1(h). Unfortunately, such a dialogue was lacking in this case.

Standard upheld its denial of Zall's benefits based, in part, on a peer review generated just prior to the final denial of his claim. Only in its final denial letter did Standard advise Zall that it had obtained this peer review and Zall was not provided a copy of the peer review until after he initiated litigation. As such, Zall had no way to respond to this evidence. Consequently, Standard denied Zall the meaningful dialogue required by ERISA section 503 and, therefore, failed to fully and fairly review his claim.

Any evidentiary deficiency by Zall was a direct result of the Standard's own procedural violations. Standard robbed Zall of his right to engage in a meaningful dialogue and to review and respond to new evidence generated in response to his appeal. Had Standard properly provided Zall with the peer report it generated in the final stage of its review of his appeal, he would have thoroughly understood

Standard's contentions with respect to his claim and would have responded with additional evidence to rebut those contentions.

The regulations plainly state that the amended version of 29 C.F.R. § 2560-503.1(h)(4)(i)—which requires that plan administrators provide claimants with an opportunity to review and respond to new evidence generated on appeal—applies to all claims filed since 2002. 29 C.F.R. § 2560-503.1(p)(1). This plain language is consistent with the Department of Labor's own interpretation of the regulations as set forth in the preamble to the 2018 amendments and in its 2009 amicus brief. Claims Procedure for Plans Providing Disability Benefits, 81 Fed. Reg. 92,316, 24-25 (Dec. 19, 2016); Br. of the Sec'y of Lab. as Amicus Curiae, *Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009).

Moreover, Standard offers no convincing legal support for its contention that Zall was obligated to pursue his procedural violation argument prior to exhausting his administrative appeals, especially since the procedural violation at issue did not occur until Standard rendered its final denial. Not only that, but Zall explicitly alleged in his Complaint that Standard denied him a full and fair review, thereby preserving his right to advance this argument.

In sum, because the District Court erred in ruling that the Standard did not violate ERISA claims procedures despite failing to provide Zall with an opportunity to review and respond to Dr. Alpert's report, Zall filed his appeal and asks this Court to rule in his favor and remand his case.

## ARGUMENT

**A. Standard Violated ERISA Claims Procedures.**

### *1. ERISA section 503's plain language confirms that the amended 2018 ERISA claims procedures apply to Zall's claim.*

The parties do not dispute that a plan violates the 2018 amended ERISA claims procedures when it fails to provide a claimant with new evidence generated on appeal and an opportunity to respond to the same prior to denying the appeal. *See* 29 C.F.R. § 2560-503.1(h)(4)(i). Thus, there can be no dispute that Standard's failure to provide Zall with a copy of Dr. Alpert's report prior to issuing its final denial decision violated these amended procedures. Rather, the parties dispute whether the 2018 amended procedures apply to Zall's claim for benefits, which was filed in 2013. For the following reasons, the District Court erred in finding that the 2018 amended ERISA claims procedures amendments do not apply to Zall's claim.

First, Standard asserts, and the District Court agreed, that all of the 2018 amendments apply only to claims filed after April 1, 2018. However, this position contradicts the plain language of ERISA claims procedure, as codified in 29 C.F.R. § 2560-503.1. Specifically, subsection (p) concerns the applicability date of these procedure—including the 2018 amended provisions—and explicitly states that "except as provided in paragraphs (p)(2), (p)(3) and (p)(4) of this section, this section shall apply to claims filed under a plan **on or after January 1, 2002**."[1] 29 C.F.R. § 2560-503.1(p)(1) (emphasis added).

---

[1] Certainly, the phrase "this section" refers to Section 2560.503-1. *McConnell v. Am. Gen. Life Ins. Co.,* 434 F. Supp. 3d 1285, 1287 (S.D. Ala. 2020).

Subsection (p)(2) applies to claims filed under a group health plan, and thus is in applicable in this case. 29 C.F.R. § 2560.503-1(p)(2). Subsection (p)(3) identifies certain paragraphs that have a later applicability date of April 1, 2018, but subsection (h)(4)(i)—the provision at issue in this case—is not one of those paragraphs. *See* 29 C.F.R. § 2560.503-1(p)(3); *see also* Pl.-Appellant Br. 10. And subsection (p)(4) applies only "to claims for disability benefits filed under a plan from January 18, 2017 through April 1, 2018" and thus is inapplicable to this case since Zall filed his claim in 2013. 29 C.F.R. § 2560.503-1(p)(4).

Thus, the provision at issue in this case, subsection (h)(4)(i), applies to all claims filed under a plan as of 2002. Because subsection (p)(1) "establishes the general rule that Section 2560.503-1 applies to claims filed after 2001, and because subsections (p)(2)-(4) do not except subsection (h)(4)(i) from the general rule as to claims filed in [2013], that subsection applies to [Zall]'s claim." *McConnell,* 434 F. Supp. 3d at 1287.

Standard attempts to muddy these waters by pointing to the "summary" statement to the regulations' amendments as set forth in the Federal Register to suggest an applicability date of April 1, 2018 should instead apply to subsection (h)(4)(i). *See* Def.-Appellee Br. 35 (citing Claims Procedure for Plans Providing Disability Benefits; Extension of Applicability Date, 82 Fed. Reg. 47,409-10 (Oct. 12, 2017)). In reliance on this summary statement, Standard argues that because "Zall filed his disability claim…in November 2013," not on or after April 1, 2018, subsection (h)(4)(i) does not apply to his claim. Def.-Appellee Br. 36. However, the blanket

applicability date set forth in the summary statement directly contradicts subsection (p)(1). 29 C.F.R. § 2560-503.1(p)(1). Importantly, "the applicability of subsection (h)(4)(i) is not governed by the summary statement but by the regulation itself" and "Section 2560.503-1(p) by its terms provides that subsection (h)(4)(i) applies to claims filed [on or after January 1, 2002]." *McConnell*, 434 F. Supp. 3d at 1287.

Standard next attempts to confuse the plain language of subsection (p)(1) by arguing (absent any legal citation) that "[s]ubsection (p) provides for continuity of the 2002 regulation with a transitional adjustment period with minimal changes to the regulation from the Effective Date of January 18, 2017 to the Applicability Date of the new amendments on April 1, 2018, as provided by subsection (p)(4)." Def.-Appellee Br. 37. Once again, this argument muddies the otherwise crystal-clear language of subsection (p)(1).

When interpreting a statute, the first step is to determine whether the language at issue has a plan and unambiguous meaning. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S. Ct. 843, 846 (1997). "[I]f the statutory language is unambiguous and the statutory scheme is coherent and consistent," the Court's inquiry must cease. *Id.*

Subsection (p)(1) states, "except as provided in paragraphs (p)(2), (p)(3) and (p)(4) of this section, [29 C.F.R. § 2560-503.1] shall apply to claims filed under a plan on or after January 1, 2002." 29 C.F.R. § 2560-503.1(p)(1). This language unambiguously confirms that unless otherwise excluded by paragraphs (p)(2), (p)(3) and (p)(4), the procedures set forth in ERISA section 503 apply to all claims filed as

of 2002. Since subsection (h)(4)(i) is not among the paragraphs that subsections (p)(2)-(4) exclude from the January 1, 2002 applicability date, subsection (h)(4)(i) must apply to all claims filed as of 2002. Because the statute is unambiguous and consistent, the Court's inquiry ends with its plain meaning.

In sum, because the 2018 amended ERISA regulations apply to Zall claims, and because Standard's conduct indisputably failed to conform with those regulations, Standard denied Zall a full and fair review.

### 2. *The Secretary's interpretation of its own regulations supports that subsection (h)(4)(i) applies to claims filed as of 2002.*

The Department of Labor is of the longstanding position that claimants have an automatic right to review and respond to new evidence and rationales developed by the plan during the pendency of an internal appeal. This position is reflected in both the preamble of the 2018 regulations and in the amicus brief filed by the Secretary of Labor in *Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009). Moreover, the Secretary's interpretation of his own regulation is entitled to deference and generally controlling unless plainly erroneous or inconsistent with the regulation. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997).

The preamble to the 2018 regulations states that,

> The Department **continues to believe** that a full and fair review requires that claimants have a right to review and respond to new evidence or rationales developed by the plan during the pendency of the appeal and have the opportunity to fully and fairly present his or her case at the administrative appeal level, as opposed merely to having a

6

> right to review such information on request only after the claim has already been denied on appeal.
>
> …
>
> The objective of these provisions is to ensure the claimant's ability to obtain a full and fair review of denied disability claims by explicitly providing that claimants have a right to review and respond to new or additional evidence or rationales developed by the plan during the pendency of the appeal, as opposed merely to having a right to such information on request only after the claim has already been denied on appeal, as some courts have held under the Section 503 Regulation. … ***It was and continues to be the view of the Department*** that claimants are deprived of a full and fair review, as required by section 503 of ERISA, when they are prevented from responding, at the administrative stage level, to all evidence and rationales.

81 Fed. Reg. at 92,24-25 (emphasis added).

This preamble is consistent with the Department's position as articulated in its 2009 amicus brief that "a claimant is denied full and fair review when evidence relied upon by the plan decisionmaker is revealed only after a final decision." Br. of the Sec'y of Lab. as Amicus Curiae at 6, *Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009) (citing *Abram v. Cargill*, 395 F.3d 882, 886 (8th Cir. 2005)) (internal quotations omitted). The Secretary of Labor offered this amicus brief to ensure plan administrators were not permitted "to avoid the meaningful dialogue that section 503 and the regulations contemplate." *Id*. Specifically, the Secretary explained, "the persistent core requirements of full and fair review include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and

7

rendering his decision." *Id*. at 7 (citing *Abram,* 395 F.3d at 886). Thus, "[t]here can hardly be a meaningful dialogue" when "[a] claimant is caught off guard when new information used by the appeals committee emerges only with the final decision." *Id*. at 8-9 (internal quotations and citations omitted). Indeed, "[a] claimant is not provided 'reasonable access' to relevant evidence and is precluded from engaging in the 'meaningful dialogue' that section [502] and the regulation require if the evidence is provided to [him] only after the decision is rendered and it is too late for [him] to respond." *Id*. at 14-15. Rather, a full and fair review "***at a minimum*** must provide a claimant with knowledge of the opposing party's contentions and a reasonable opportunity to meet them." *Id*. at 19 (internal citations omitted) (emphasis added).

In sum, both the regulations' preamble and the Secretary's amicus brief confirm the Department of Labor's interpretation that the 2018 amended version of subsection (h)(4)(i) applies to claims filed as of 2002—which is consistent with the regulations' plain language.[2] Moreover, the Secretary's interpretation of its regulations must be afforded significant deference.[3]  *Auer,* 519 U.S. 461-63.

---

[2] In fact, the regulations' preamble and the Secretary's Amicus Brief support that even under the 2002 regulations, plans had a duty to afford claimants the opportunity to review and respond to new information generated on appeal as opposed to merely having a right to such information only upon request. 81 Fed. Reg. 92,324-25; *see generally* Br. of the Sec'y of Lab. as Amicus Curiae.

[3] Because subsection (p)(1) is unambiguous, however, the Court need not resort to this Auer deference. *See Jette v. United of Omaha Life Ins. Co.*, No. 20-1713, 2021 U.S. App. LEXIS 33433, at *28 (1st Cir. Nov. 10, 2021) (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415, 204 L. Ed. 2d 841 (2019) (explaining that "a court should not afford Auer deference unless the regulation is genuinely ambiguous")). Thus, even if subsection (p)(1) had been ambiguous, applying the Auer deference to the Department of Labor's interpretation confirms that subsection (h)(4)(i) applies to all claims filed as of 2002. *See id.* at *28.

**B. Zall did not waive his procedural violation argument.**

Standard seeks to escape liability for its failure to comply with ERISA's regulations by asserting that Zall waived this argument by (1) not immediately pursuing litigation at the time the violation occurred and (2) failing to allege in his Complaint "any purported regulatory violation premised on the failure to provide him with Dr. Alpert's report during the administrative review." Def.-Appellee Br. 32. These assertions are both factually and legally flawed.

### 1. *Exhausting the administrative appeal process did not waive Zall's right to advance his procedural violation argument.*

Standard suggests that if it committed a procedural violation, Zall was immediately obligated to file his lawsuit pursuant to 29 C.F.R. § 2560.503-1(l), such that his failure to do so waived his right to advance any argument based on said violation. Def.-Appellee Br. 32. This argument is flawed for multiple reasons.

First, Zall could not have pursued his procedural violation argument during the administrative review process because Standard had not yet violated ERISA claims procedures. Indeed, Standard did not violate 29 C.F.R. § 2560.503-1(h)(4)(i) until it actually issued a final decision without first providing Zall with the new evidence it relied upon. *See* 29 C.F.R. § 2560.503-1(h)(4)(i). In other words, he could not have deemed his administrative remedies exhausted and pursued remedies under ERISA 502(a) until after Standard rendered its final denial decision on August 29, 2020.[4] Thus, Standard's assertion that Zall needed to pursue litigation before it had

---

[4] Notably, Standard's issuance of its final denial on August 29, 2020 already had the effect of exhausting the administrative appeal process. Thus, Zall's ability to deem his administrative remedies exhausted and pursue remedies under ERISA 502(a) pursuant to 29 C.F.R. §2560.503-1(l) was moot.

even issued its final denial decision—i.e., before the violation actually occurred—puts the cart before the horse and is unconvincing.

Second, the plain language of 29 C.F.R. § 2560.503-1(l) does not obligate a claimant to immediately file suit upon the plan's procedural violation; rather, it provides that the claimant "shall be deemed to have exhausted the administrative remedies available under the plan and ***shall be entitled to*** pursue any available remedies under section 502(a)." 29 C.F.R. § 2560.503-1(l) (emphasis added). This language is discretionary, not mandatory, suggesting that a claimant may pursue litigation upon a procedural violation but does not waive their procedural violation argument if they do not immediately do so.[5]

Third, Standard's cited case, *Dragus v. Reliance Standard Life Ins. Co.,* is inapplicable here and does not support Standard's argument that Zall "'effectively waiv[ed]' any argument for a regulatory violation" by pursuing his administrative appeal to conclusion. Def.-Appellee Br. 33 (citing *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 672 (7th Cir. 2018)). In *Dragus*, the regulatory violation arose when the plan failed to render a timely decision on the plaintiff's ***initial claim*** for benefits. *Dragus v. Reliance Standard Life Ins. Co.*, 882 F.3d 667, 672 (7th Cir. 2018). After the violation occurred—i.e., after the plan missed the deadline to render its initial decision—the plaintiff proceeded to wait for the untimely initial decision, file

---

[5] Adopting Standard's interpretation of 29 C.F.R. § 2560.503-1(l) would create confusion regarding how quickly a claimant must file a lawsuit after a regulatory violation occurs. Certainly, the litigation cannot be immediately commenced as a claimant would need a reasonable amount of time to prepare their complaint. Thus, it would fall to the courts to expend judicial resources deciding this avoidable and immaterial issue.

an administrative appeal of that initial decision, wait for the appeal decision, and, only then, file the lawsuit. *Id*. The Seventh Circuit clarified that "if [plaintiff] wanted to pursue available remedies for the [plan's [procedural violation], he should have done so when the issue arose." *Id*. In comparison, the violation at issue in this case arose when Standard issued its final denial without first providing Zall the opportunity to review and respond to Dr. Alpert's report. Unlike the plaintiff in *Dragus,* the very next step Zall took after the procedural violation arose was to file his lawsuit. Thus, the Seventh Circuit's logic as set forth in *Dragus* would support that Zall preserved his right to advance his procedural violation argument.

Finally, Standard impermissibly transfers blame to Zall for its own procedural violation, asserting that that Zall "never requested a copy of the report…." Def.-Appellee Br. 32. It is not incumbent upon a claimant to request a copy of new evidence generated on appeal; rather, the 2018 amended ERISA claims procedures obligate the plan to provide such evidence to the claimant automatically. 29 C.F.R. § 2560.503-1(h)(4)(i). Even if this were not the case, Standard only informed Zall that it had generated new evidence (i.e., Dr. Alpert's report) in its letter dated August 20, 2020. Admin. Rec. at 000483.[6] Then, just nine days later, Standard denied his appeal. *Id*. at 000489. This leaves an unreasonably small window of time in which, according to Standard, Zall was to send a written request for a copy of the report. Such unreasonable claims procedures fall short of facilitating the "meaningfully dialogue" ERISA requires.

---

[6] Citations to "Admin. Rec. at _" are to the Administrative Record filed by Standard on June 11, 2021 as Western District of Wisconsin ECF Document Number 13.

### 2. Zall's Complaint states he was denied a full and fair review, thus preserving his procedural violations argument.

Standard further argues that Zall's complaint did not allege any procedural violation premised on Standard's failure to provide him a copy of Dr. Alpert's report, thereby waiving his right to advance this argument. Def.-Appellee Br. 32. Contrarily, Zall's complaint alleged that Standard "did not perform a full and fair review of [his] claim." Compl. ¶ 30. To confirm, a plan administrator fails to provide claimants with a full and fair review when they fail to comply with ERISA claims procedures. 29 C.F.R. § 2560.503-1(h)(2). Thus, Standard's procedural violations are inherently assumed by Zall's assertion that he was denied a full and fair review. Zall's complaint simply, concisely, and directly states the events that he alleges form the factual basis for his complaint, and he was not required to plead each and every legal theory he intended to advance. *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 808 (7th Cir. 2014); *see also Johnson v. City of Shelby*, 574 U.S. 10, 12, 135 S. Ct. 346, 347 (2014).

Similarly, while a party cannot advance a new legal theory for the first time in **response** to a summary judgment motion, *Anderson v. Donahoe*, 699 F.3d 989, 998 (7th Cir. 2012), Zall advanced his procedural violation argument in his **opening** summary judgment brief. Pl.'s Br. Summ. J. 7-9. As the Seventh Circuit explains, when a party makes a new argument on summary judgment, the Court must permit the argument so long as (1) it changes only the plaintiff's legal theories and not the complaint's factual theory, and (2) allowing the new theory will not cause unreasonable delay or make it more costly or difficult to defend the suit. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017).

As to the first factor, Zall's argument that Standard violated ERISA procedures does not change the Complaint's factual theory. As discussed above, Zall signaled his pursuit of this theory by stating in his Complaint that Standard denied him a full and fair review. *See* Compl. ¶ 30. Thus, Zall's argument that Standard violated ERISA procedures is an "'alternative legal characterization' of the complaint's facts," not a new fact. *Chessie Logistics Co.*, 867 F.3d at 861 (citing *Whitaker*, 772 F.3d at 808-09).

As to the second factor, Standard has made no assertion that Zall's procedural violation argument has caused any unreasonable delay or made it more costly or difficult to defend this suit. Indeed, any such argument would be unconvincing. In *Chessie Logistics Co.,* the Court prohibited plaintiff from advancing a new theory as it would "have led inevitably to further discovery, delay, and expense." *Id.* at 861. In comparison, this case is governed by ERISA, which generally disallows discovery beyond the administrative record. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 814 (7th Cir. 2006). Thus, permitting Zall's procedural violation argument to proceed will not lead to further delay and expense.

### C. Standard's arbitrarily denied Zall's benefits.

"The purpose of [the 'full and fair review'] requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts." *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 287 (2d Cir. 2000) (alteration in original) (quoting *DuMond v. Centex Corp.*, 172 F.3d 618, 622 (8th Cir. 1999)). Thus, when a plan administrator violates ERISA

section 503, "[t]he question becomes one of identifying the consequences of the defendant's violation." *McConnell*, 434 F. Supp. 3d at 1288. In this case, Standard's violation had severe consequences for Zall's disability claim.

In its final denial decision, Standard—in reliance on Dr. Alpert's report—took issue with the fact that "no additional imaging had been done since 2014." Admin. Rec. at 000485; *see also* Def.-Appellee Br. 26 (arguing that "Zall must provide written proof that he has a current Disability due to EMG-verified radiculopathy, not simply a 5-year-old EMG that was merely consistent with radiculopathy in the past…"). However, Zall was not aware that Standard took issue with the lack of updated imaging until after he received the final denial decision. Indeed, Standard made no mention of this issue in its initial denial letter and did not advise Zall that updated imaging was necessary to perfect his claim. *See* Admin. Rec. at 000498-02. Had Standard afforded Zall the opportunity to review and respond to Dr. Alpert's report (as is required by the regulations), he could have adequately addressed these contentions by undergoing updated imaging.

Likewise, in its final denial letter—again, in reliance on Dr. Alpert's report—Standard questions for the first time whether Zall ever had radiculopathy, noting "testing showed only evidence of a chronic C7 radiculopathy without ongoing denervation," that his exam did not reveal the findings that would be expected "if [he] truly had neurologic abnormalities consistent with a C7 radiculopathy," and that "imaging did not reveal … typical imaging findings for a cervical radiculopathy." Admin. Rec. at 000485; *see also* Admin. Rec. 000062, 64 (alleging that there is no

support for Zall's diagnosis of radiculopathy). Prior to receiving the final denial letter, Zall had no indication that Standard doubted his radiculopathy diagnosis and thus had no reason to submit additional evidence confirming this diagnosis.

In sum, Standard's decision to deny Zall's claim based on alleged lack of medical support was arbitrary and capricious given its own procedural violations caused this deficiency. Because Standard failed to engage in a meaningful dialogue with Zall regarding his claim, its final denial decision is not rationally supported by the record.

## CONCLUSION

For the reasons discussed in Plaintiff-Appellant's initial brief and this reply brief, the District Court's December 27, 2021 Opinion and Order should be reversed and this matter remanded.

Respectfully submitted this 12th day of May, 2022.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant, Eric S. Zall*

By: */s/ William E. Parson*
William E. Parsons, WI SBN 1048594
Email: wparsons@hq-law.com
Jessa L. Victor, WI SBN 1099144
Email: jvictor@hq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. (32)(A)(7) and CIRCUIT RULE 32(c)**

The undersigned, counsel of record for the Plaintiff-Appellant, furnishes the

following in compliance with Fed. R. App. P. Rule 32(a)(7) and Circuit Rule 32(c).

I hereby certify that this Brief conforms to the rules contained in F.R.A.P.

32(a)(7) and Circuit Rule 32(cs) for a brief produced with a proportionally spaced serif

font. The length of the brief is 4,107 words.

Dated this 12th day of May, 2022.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant, Eric S. Zall*

By: */s/ William E. Parson*
William E. Parsons, WI SBN 1048594
Email: wparsons@hq-law.com
Jessa L. Victor, WI SBN 1099144
Email: jvictor@hq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for Plaintiff-Appellant, hereby certifies that on May 12, 2022, an electronic copy of the Reply Brief of Plaintiff-Appellant, Eric S. Zall was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuity by using the CM/ECF system.

Counsel for Defendant-Appellee, Jacqueline J. Herring (jackie.herring@svs-law.com) who is a registered MS/ECF user, will be served by the CM/ECF system.

Dated this 12th day of May, 2022.

> HAWKS QUINDEL, S.C.
> *Attorneys for Plaintiff-Appellant, Eric S. Zall*
>
> By: */s/ William E. Parson*
> William E. Parsons, WI SBN 1048594
> Email: wparsons@hq-law.com
> Jessa L. Victor, WI SBN 1099144
> Email: jvictor@hq-law.com
> 409 E. Main Street
> Madison, WI 53703
> Telephone: 608/257-0040
> Facsimile: 608/256-0236

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 25(a)**

The undersigned, counsel of record for Plaintiff-Appellant, hereby certifies that

the Reply Brief of Plaintiff-Appellant, Eric S. Zall was electronically filed pursuant

to Circuit Rule 25(a).

Dated this 12th day of May, 2022.

HAWKS QUINDEL, S.C.
*Attorneys for Plaintiff-Appellant, Eric S. Zall*


By: */s/ William E. Parson*
William E. Parsons, WI SBN 1048594
Email: wparsons@hq-law.com
Jessa L. Victor, WI SBN 1099144
Email: jvictor@hq-law.com
409 E. Main Street
Madison, WI 53703
Telephone: 608/257-0040
Facsimile: 608/256-0236